UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas A. FAUROTE,
Defendant-Appellant.

No. 83–1597.

United States Court of Appeals
Seventh Circuit.

Argued April 12, 1984.

Decided Nov. 20, 1984.

Rehearing Denied Jan. 24, 1985.

David H. Miller, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Thomas A. Faurote, pro se.

Before, PELL and COFFEY, Circuit Judges, and NICHOLS, Senior Circuit Judge.*

* The Honorable Philip Nichols, Jr., Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, is sitting by designation.

1. Title 18 U.S.C. § 922(b)(5) (1982) provides: "(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—

COFFEY, Circuit Judge.

Defendant-appellant Thomas A. Faurote, appearing *pro se*, appeals his conviction for one count of failing to document the sale of a firearm, in violation of 18 U.S.C. § 922(b)(5). We affirm.

## I

The record reveals that the defendant, Thomas Faurote, is a quality assurance inspector for the Kunkle Valve Co. of Fort Wayne, Indiana. During the relevant time period, December 1981 to July 1982, Faurote held a Federal firearms license and an Indiana handgun sales permit. Faurote operated a firearms business from his residence in Fort Wayne, Indiana—collecting, trading, and selling firearms to members of the general public. Federal law requires that when a licensed dealer sells a firearm to a non-licensed individual, the purchaser's name, age, and place of residence must be reported on a "firearm transaction record," commonly referred to as a Federal form 4473. *See* 18 U.S.C. § 922(b)(5)(1982).[1] The Federal regulations expressly provide that:

"Prior to making an over-the-counter transfer of a firearm to a non-licensee who is a resident of the State in which the licensee maintains his business or collection premises, the licensed importer, licensed manufacturer, licensed dealer, or licensed collector so transferring the firearm shall obtain a Form 4473 from the transferee showing the name, address, date and place of birth, height, weight, and race of the transferee, and certification by the transferee that he is not prohibited ... from receiving a firearm in interstate or foreign commerce."

(5) any firearm or ammunition except .22 caliber rimfire ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual, or the identity and principal and local places of business of such person if the person is a corporation or other business entity.

27 C.F.R. § 178.124 (1983). Once completed, a copy of the Federal form 4473 is forwarded to the law enforcement officer designated on the form, and delivery of the firearm is delayed for a period of seven days to allow the officer to review the information. *Id.* In addition, the licensed dealer is required to retain the original of each Federal form 4473 as part of his permanent file. *Id.*

In December 1981, Mark Jones, a paid informant of the Allen County, Indiana Police Department, contacted Faurote concerning a firearms advertisement placed by Faurote in the *Peddler's Post,* a trading newspaper for northeast Indiana. Jones was interested in trading his Mouser 30.06 rifle for one of Faurote's advertised handguns. Faurote instructed Jones to "come out to his house" and when Jones arrived, Faurote offered to trade a .25 caliber semi-automatic pistol for Jones' rifle. Faurote added that "there wouldn't be papers" involved in the transaction. Jones refused to make the trade, claiming that it was "too cheap of a deal." Following this meeting, Jones called Special Agent Thomas Lambert of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and informed him that Faurote offered to sell a handgun without documenting the transaction on a Federal form 4473.

On February 7, 1982, Rulo Batchelder, a part-time officer with the Allen County Police Department and fellow employee of Faurote at the Kunkle Valve Co., purchased a .16 gauge single barrel shotgun from Faurote for $35.00. Faurote never requested that Batchelder provide him with the personal information that is necessary to complete a Federal form 4473 and, upon inspection of Faurote's firearm transaction records, the ATF discovered no documentation of this sale.

The following month, on March 11, 1982, James Richardson, a special agent of the ATF, phoned Faurote concerning his handgun advertisement appearing in the *Peddler's Post.* The purpose of Richardson's inquiry was to conduct a preliminary investigation and determine if Faurote was "dis-posed to sell firearms" without reporting the transaction on a Federal form 4473. Following a brief conversation, Faurote and Richardson agreed to meet at Faurote's house later that evening. At that meeting, Faurote displayed the various guns for sale and informed Richardson that every sale had to be documented on a Federal form 4473. Based upon the information obtained at this meeting, Richardson concluded that Faurote "would not sell firearms without paperwork."

On April 6, 1982, Joseph Byers, acting as an undercover informant for the ATF, contacted Faurote, identified himself as "Joseph Meyers," and arranged a meeting to inspect the handguns that Faurote had for sale. During the meeting, Byers expressed an interest in purchasing certain firearms, but explained that he was reluctant to do so through a licensed dealer because he "did not like to fill out paperwork." Two days later, on April 8, 1982, Byers phoned Faurote and at that time, agreed to purchase an unregistered Colt .45 semi-automatic revolver that Faurote had on display at his house. A week later, on April 14, 1982, Byers traveled to Faurote's house, purchased the revolver, and followed Faurote's instruction to "[g]ive the money to [Faurote's] wife." Faurote never requested that Byers furnish him with the personal information necessary to complete a Federal form 4473 and, upon inspection of Faurote's firearm transaction records, the ATF found no documentation of this sale.

On July 13, 1982, Faurote contacted Rulo Batchelder, the part-time policeman to whom he had previously sold a .16 gauge single barrel shotgun in February of 1982, and gave him a list describing some ten different illegal firearm transactions that Faurote had learned of from various sources. According to Faurote, he wanted to assist the local and Federal officials in their crackdown on illegal firearm transactions in northeast Indiana. Faurote asked Batchelder to pass the list along to ATF agents, but Batchelder refused because the list did not contain the names of those individuals who had illegally purchased and

sold the firearms. As a result of Batchelder's refusal to notify the ATF, Faurote became suspicious that he was being "framed" by Batchelder. On July 29, 1982, Faurote visited Batchelder, inquired about the list, and allegedly recorded the ensuing conversation with a micro-cassette recorder hidden on his person. During that conversation Faurote allegedly told Batchelder, "I wish you would have gave [the list] to [the ATF] when I gave it to you." Batchelder allegedly responded, "I wish you had told me that you were willing to supply all of the names when you gave me the list."

On December 2, 1982, a Federal grand jury returned an indictment against Faurote, charging him with six counts of failing to document the sale of firearms, in violation of 18 U.S.C. § 922(b)(5). Faurote pleaded not guilty to each of the six counts and requested a trial by jury. At trial, Faurote contended that he was not predisposed to sell firearms without reporting the transaction on a Federal form 4473 and thus he was entrapped into violating 18 U.S.C. § 922(b)(5). In response to this entrapment defense, the Government called Rulo Batchelder as a rebuttal witness. Batchelder testified that the list he received from Faurote on July 13, 1982, "was of no use" because there were no "specific names, dates, places." On cross-examination, Batchelder could not recall his alleged statement to Faurote on July 29, 1982, that "I wish you had told me that you were willing to supply all the names when you gave me the list." At that time, the defense counsel called Faurote to the stand and attempted to introduce the alleged tape recording of the July 29 conversation, along with an alleged written transcript of that recording, into evidence. Following the defense counsel's repeated attempts to establish the authenticity of the tape recording, the district court judge ruled that the alleged recording, and the transcription of that recording, were inadmissible because the defendant had failed to lay a proper foundation for the introduction of such evidence.

Based upon the evidence presented at trial, the jury found Faurote guilty on only one of the six counts of failing to document the sale of a firearm, in violation of 18 U.S.C. § 922(b)(5). In particular, the jury found that Faurote failed to report the April 8, 1982 sale of the Colt .45 caliber semi-automatic revolver to Joseph Byers. On March 21, 1983, the district court judge fined Faurote $500, imposed a suspended sentence, and placed him on probation for a period of two years. Faurote filed a *pro se* appeal before this court and argues that the district court erred in failing to admit the alleged tape recording of his conversation with Batchelder. Faurote further contends that he was unable to prove his entrapment defense because the Government "coached or enticed" Mark Jones into providing false testimony. Finally, Faurote claims that the district court improperly instructed the jury as to the elements of 18 U.S.C. § 922(b)(5).

## II

We initially address Faurote's claim that the district court erred in failing to admit the alleged tape recording of Faurote's conversation with Batchelder on July 29, 1982. It is a well-settled principle of law that the party attempting to admit a tape recording into evidence must prove, by clear and convincing evidence, that the tape is a true, accurate, and authentic recording of the conversation, at a given time, between the parties involved. *United States v. Blakey*, 607 F.2d 779, 787 (7th Cir.1979) (*"Blakey"*); *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977); *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir.1977) (*"Biggins"*); *Annot.*, 58 A.L.R.2d 1024, 1038 (1958). Furthermore, in this circuit it is clear that the trial judge exercises broad discretion in determining whether this burden has been satisfied. *Blakey*, 607 F.2d at 787. Accordingly, the trial judge's ruling on the admissibility of the tape will not be overturned on appeal absent "extraordinary circumstances." *Id.* at 787. *See also Biggins*, 551 F.2d at 66–67.

■ The record reveals that on the eve of trial Faurote re-recorded the alleged conversation with Batchelder from a micro-cassette tape to a standard tape. In addition, Faurote prepared a written transcript of the alleged conversation, parts of which were apparently read into the record during the corss-examination of Batchelder. (We note, however, that no "offer of proof" was made at trial and neither the tape recording nor the transcript were formally made a part of the district court record that is before this court for review.) At trial, the defense counsel called Faurote to the stand to establish the authenticity of the tape for purposes of Fed.R.Evid. 901(b)(5). When the Government objected to the introduction of the tape recording for lack of a proper foundation, the trial judge allowed the defendant ample opportunity to "prove the competency of the operator, the fidelity of the recording equipment, the absence of material alterations in the relevant portions of the recording, and the identity of the speakers." *United States v. Hughes,* 658 F.2d 317, 322 (5th Cir.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). *See also Biggins,* 551 F.2d at 66. Despite repeated attempts, Faurote was unable to establish that the tape had not been erased or altered, and thus the trial judge ruled that "there is a threshold issue of admissibility which goes to this question of [reliability which ultimately becomes a question of] weight. I am going to sustain the [Government's] objection." Accordingly, the trial judge refused to admit the tape recording into evidence. The trial judge was in the best position to weigh the credibility of the parties and the evidence presented on the authenticity of Faurote's alleged tape recording. In light of the evidence presented, we hold that no extraordinary circumstances exist to disturb the trial judge's decision to deny admission of the alleged tape recording.

■ We add that even if the failure to admit the tape recording constitutes error, such error was harmless. The defense counsel attempted to introduce the tape recording in order to establish that Faurote was willing to aid the ATF in uncovering illegal firearm transactions, and thus was not predisposed to sell firearms without filling out a Federal form 4473. The record reveals, however, that earlier in the trial the defense counsel had elicited testimony from ATF Agent Richardson that Faurote was not predisposed to "sell firearms without paperwork." Moreover, the tape recording was intended to impeach Batchelder's testimony, including his statement that on February 7, 1982, he purchased a .16 gauge single barrel shotgun from Faurote without completing a Federal form 4473. The record clearly reveals, however, that the jury found Faurote not guilty of this alleged illegal transaction. Accordingly, even if we were to hold, which we do not, that the trial judge erred in not admitting the alleged tape recording, such error was harmless.

■ Faurote next claims that he was prevented from proving the defense of entrapment because the "government coached or enticed one of it's [sic] witnesses into providing a false testimony." Specifically, Faurote asserts that during the course of the trial, ATF Agent Lambert caused informant Mark Jones to sign and back-date a false statement, claiming that Faurote offered to trade a .25 caliber semiautomatic pistol for one of Jones' rifles without recording the transaction on a Federal form 4473. Faurote contends that as a result of this allegedly false statement, he was unable to establish his lack of predisposition for purposes of his entrapment defense. Faurote offers no evidence whatsoever to support this bold, self-serving, conclusory accusation that ATF Agent Lambert and Government witness Mark Jones collaborated on a false statement. Additionally, upon review of the record we have found absolutely no evidence to support Faurote's contention of Government impropriety. According to the law in this circuit, "[i]t is not our prerogative to retry the case, weigh the evidence, or assess the credibility of the witnesses." *United States v. Carter,* 720 F.2d 941, 946 (7th Cir.1983)(citing *United States v. Miles,* 401

F.2d 65, 67 (7th Cir.1968)). The jury, as the trier of fact, is to determine the witnesses' credibility and resolve the conflicts that arise in the evidence and testimony. *United States v. Jordan*, 722 F.2d 353, 359 (7th Cir.1983); *United States v. Garcia*, 562 F.2d 411, 414 (7th Cir.1977). In the instant case, Faurote's defense counsel had sufficient opportunity to cross-examine Jones and, based upon the evidence presented, the jury was able to assess Jones' credibility as a witness. Accordingly, we hold that Faurote's allegation of Government wrongdoing is without merit.

■ Faurote next contends that the district court erred in instructing the jury on the elements of an offense under 18 U.S.C. § 922(b)(5). According to Faurote, it was improper to quote the language of 18 U.S.C. § 923(g) which states that a licensed dealer must maintain records of certain firearm transactions as prescribed by the Secretary of the Treasury.[2] Faurote's objection to this instruction lacks any basis in law or fact. It is obvious that the language of 18 U.S.C. § 923(g) is relevant to inform the jury that Faurote was under a duty as a licensed dealer to maintain records of his firearm transactions. Moreover, the law is well-settled that a court may utilize the language of a statute when charging the jury. *United States v. Mitchell*, 625 F.2d 158, 162 (7th Cir.), *cert. denied*, 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980); *United States v. Keane*, 522 F.2d 534, 554 (7th Cir.1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976); *Rimerman v. United States*, 374 F.2d 251, 254 (8th Cir.), *cert. denied*, 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967). Accordingly, we hold that the district court did not commit error when it incorporated the language of 18 U.S.C. § 923(g) in the jury instructions.

■ Faurote next contends that the district court erred in instructing the jury as to the firearm sales that are within the scope of 18 U.S.C. § 922(b)(5). The trial judge stated, in relevant part, that:

> "A licensed dealer must comply with the recording provisions of 27 C.F.R. Section 178.124 and Section 178.125 each time he disposes of a firearm. It is immaterial whether the weapons sold were originally acquired for the defendant's personal use or for business purposes. They became a part of his business inventory the moment they were placed on the market for sale."

According to Faurote, this instruction is "totally irrelevant and immaterial to the charge for which the defendant was being tried." We disagree. The instruction properly informs the jury that each time a licensed dealer disposes of a firearm, whether it be a firearm originally acquired for personal or business use, the dealer must comply with the Federal regulations and record that transaction. The instruction accurately sets forth the relevant Federal law, and thus we hold that the district court did not commit error in reading that instruction to the jury.

■ Faurote further contends that it was error to instruct the jury as follows:

> "The defendant contends that because he was acting as a 'middle man' he did not know or believe the sales to Joseph Byers were covered by the federal regulations and he did not knowingly fail to record the name, age and residence of Joseph Byers."

According to Faurote, he "never contended that 'he was acting as a middleman.'" However, Faurote admits in his reply brief that, "the idea developed that since the defendant's wife was an individual and not a licensed dealer, she could legally sell the .45 which Mr. Byers had expressed an interest in." The record clearly reveals that Faurote refused to handle the money that Byers paid for the Colt .45 semi-auto-

---

**2.** The district court instructed the jury that:
"Title 18, United States Code, Section 923(g) reads in pertinent part:
Each ... licensed dealer ... shall maintain such records of importation, production, ship- ment, receipt, sale, or other disposition, of firearms ... at such place, for such period, and in such form as the Secretary may by regulations prescribe...."

matic pistol. Instead, Faurote instructed Byers to "[g]ive my wife the money." In light of this scenario, Faurote further admits in his reply brief that "it is true, to a degree, that he [Faurote] was acting as a 'middleman.'" Accordingly, we hold that no error was committed when the district court referred to Faurote's role in the firearm transaction with Byers as that of a "middle man."

### III

 The judgment of conviction, sentence, and fine are affirmed.[3]

**3.** The parties' briefs in this case do not conform to Fed.R.App.P. 28, Circuit Rule 9, nor the guidelines set forth in section XVIII of the Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit. The briefs fail to recite a concise, fair summary of the relevant facts and also fail to adequately discuss and resolve the legal issues involved. Such deficiencies on the part of the *pro se* appellant are somewhat understandable, but the same cannot be said for the attorney representing the United States. As a result of the Government's incomplete statement of facts, consisting of the same nine sentences appearing in the appellant's brief, this court was required to spend many additional hours deciphering the relevant facts. We remind the Government that in future arguments before this court they would do well to follow the detailed and carefully drafted Federal Rules of Appellate Procedure and the Circuit Rules of this court.