**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John DEGAGLIA, Defendant–Appellant.**

**No. 89–2909.**

United States Court of Appeals, Seventh Circuit.

Argued May 15, 1990.

Decided Sept. 13, 1990.

K. Tate Chambers, Bradley W. Murphy, Asst. U.S. Attys., Office of the U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Charles T. Whitelock, Whitelock & Moldof, Fort Lauderdale, Fla., Jon May, May & Cohen, Miami, Fla., for defendant-appellant.

Before WOOD, Jr. and RIPPLE, Circuit Judges, and CRABB, Chief District Judge.[*]

RIPPLE, Circuit Judge.

A jury convicted John Degaglia of conspiring to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, distributing cocaine, in violation of 21 U.S.C. § 841(a)(1), and laundering money, in violation of 18 U.S.C. § 1956(a)(1). On appeal, the defendant challenges three of the district court's evidentiary rulings. For the following reasons, we affirm the judgment of the district court.

---

[*] The Honorable Barbara B. Crabb, Chief Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation.

**374**

## I

### BACKGROUND

#### A. *Facts*

On July 22, 1988, John Kepple, a government informant, introduced Ed Halligan, an agent of the Drug Enforcement Administration (DEA), to Richard Rhoda. On that date, Agent Halligan purchased two ounces of cocaine from Rhoda. On August 3, Agent Halligan purchased another four ounces of cocaine from Rhoda. Following the August 3 transaction, Kepple and Rhoda purchased $4000 in United States Postal money orders. These money orders were made out in the name of the defendant, John Degaglia.

The final cocaine purchase from Rhoda took place on August 16, 1988. On that date, Agent Halligan purchased one pound of cocaine. Shortly after the transaction was completed, DEA agents arrested Rhoda. Thereafter, Rhoda placed and allowed the agents to record a telephone call to Mr. Degaglia. Rhoda dialed the number for the defendant's home in Florida. Mr. Degaglia answered and, during the course of his conversation with Rhoda, discussed future drug deliveries. Mr. Degaglia also made statements demonstrating his involvement in Rhoda's cocaine distribution activities, including the comment that "[w]e've got excellent drug." Govt. Ex. 17T at 3.

On several occasions in July and early August of 1988, Rhoda had stayed with Mr. Degaglia at the defendant's Florida home. Kepple testified that, during this time period, Rhoda identified his source as "John," who lived in Florida. Tr. V.III at 112. Rhoda also said that he had been staying with his source and indicated that "his guy in Florida, John ... could produce whatever [Agent Halligan] could come up with the money for." *Id.* at 112–13.

On August 17, 1988, the day following Rhoda's arrest, DEA Agent David Olson arrested Mr. Degaglia. In carrying out the arrest, Agent Olson spoke with Mr. Degaglia for approximately ninety minutes. The

agent subsequently spoke with Mr. Degaglia during the defendant's processing at the jail and heard Mr. Degaglia speak at the initial appearance.

#### B. *District Court Proceedings*

Based on these events, Mr. Degaglia was charged with one count of conspiring to possess with the intent to distribute cocaine, three counts of distributing cocaine, and one count of laundering money.[1] At trial, the government established the facts set forth above. Agent Olson testified that Mr. Degaglia has a distinctive voice that is high pitched, raspy, and nasal. He also identified Mr. Degaglia as one of the speakers in several recorded telephone conversations. Based on the agent's identification of Mr. Degaglia's voice, the government also introduced several tape recorded conversations, including Rhoda's June 16 call to the defendant's home. The tapes were admitted over the defendant's objections that Agent Olson's testimony was insufficient to establish the tapes' authenticity and that the identification procedure was unduly suggestive.

Immediately following these objections, defense counsel also challenged, on relevance grounds, the government's stated intention to introduce testimony that guns were found in Mr. Degaglia's home at the time of his arrest. The government responded that the existence of the guns formed part of the conversation between the defendant and Agent Olson and therefore was relevant to Agent Olson's identification of Mr. Degaglia's voice. The district court agreed that the evidence was relevant, but ruled that it was admissible only if Mr. Degaglia challenged Agent Olson's identification. Defense counsel then agreed not to make Agent Olson's identification an issue for the jury.

With respect to the June 16 call, Rhoda's half of the conversation was not permitted into evidence because he did not testify. Mr. Degaglia objected that the introduction of only his portion of the conversation

---

1. Richard Rhoda also was named in the indictment. However, his case was severed and he pled guilty following the close of evidence in Mr. Degaglia's trial.

would confuse and mislead the jury. He also claimed that the tape was unclear with respect to the word "drug" in the comment "[w]e've got excellent drug," Tr. V.II at 45. The district court overruled these objections, admitted the tape in redacted form, and instructed the jurors that they must resolve any dispute about the content of the tape. Mr. Degaglia did not present any evidence and, based on the government's case, the jury returned a guilty verdict on all five counts. He now alleges that trial errors require reversal of his conviction.

## II

## ANALYSIS

### A. *Standard of Review*

■ On appeal, Mr. Degaglia challenges several of the district court's evidentiary rulings. Our review of these rulings is limited to whether the district court abused its discretion. *See United States v. McNeese,* 901 F.2d 585, 598 (7th Cir.1990); *United States v. Briscoe,* 896 F.2d 1476, 1490 (7th Cir.1990). Mr. Degaglia "carries a heavy burden in challenging the trial court's admission of evidence because ' "a reviewing court gives special deference to the evidentiary rulings of the trial court." ' *United States v. Shukitis,* 877 F.2d 1322, 1327 (7th Cir.1989) (citation omitted)." *United States v. Barnes,* 909 F.2d 1059, 1069 (7th Cir.1990); *see Briscoe,* 896 F.2d at 1489–90 (quoting *Shukitis* ). We recognize that the district judge, "who saw and heard the evidence firsthand, can best balance probity and prejudice." *McNeese,* 901 F.2d at 598. Thus, we uphold evidentiary rulings unless the defendant demonstrates that the district court abused its discretion. *Id.; see also Barnes,* 909 F.2d at 1069; *Briscoe,* 896 F.2d at 1490. With specific regard to the admissibility of tape recordings, this court has noted that "the trial judge exercises broad discretion in determining whether [the government has satisfied its burden of authenticating a tape recording]. Accordingly, the trial judge's ruling on the admissibility of the tape will not be overturned on appeal absent 'extraordinary circumstances.' " *United*

States v. Faurote,* 749 F.2d 40, 43 (7th Cir.1984) (citations omitted); *see also United States v. Carrasco,* 887 F.2d 794, 802 (7th Cir.1989) (quoting *Faurote* ).

### B. *Merits*

Mr. Degaglia submits that the lynchpin in the government's case against him was the admission of the tape recording of a conversation between him and Richard Rhoda on June 16. He raises several objections to the admission of that tape. In the following subsections, we shall address each of his submissions.

#### 1. Authentication of the June 16 tape recording

■ The defendant asserts that the identification of his voice on the June 16 tape was unreliable and that the procedures used to make that identification were unduly suggestive.

Before evidence may be introduced, the party requesting its admission must provide proof "sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). With regard to recorded conversations, "[i]t is a well-settled principle of law that the party attempting to admit a tape recording into evidence must prove, by clear and convincing evidence, that the tape is a true, accurate, and authentic recording of the conversation, at a given time, between the parties involved." *United States v. Faurote,* 749 F.2d 40, 43 (7th Cir.1984); *see United States v. Carrasco,* 887 F.2d 794, 802 (7th Cir.1989) (quoting *Faurote* ); *United States v. Shukitis,* 877 F.2d 1322, 1327 (7th Cir.1989).

Here, the government sought to identify Mr. Degaglia's voice primarily through the testimony of Agent Olson. "[T]he standard of familiarity necessary for an authenticating witness to identify the voices of participants in conversations recorded on tape" is clear:

Federal Rule of Evidence 901(b)(5) ... permits voice identification ... to be made "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."

As long as the basic requirement of familiarity is met, lay opinion testimony is an acceptable means for establishing the speaker's identity.

*United States v. Briscoe*, 896 F.2d 1476, 1490 (7th Cir.1990) (quoting *United States v. Vega*, 860 F.2d 779, 788 (7th Cir.1988)). " 'Minimal familiarity is sufficient for admissibility purposes.' " *United States v. Alvarez*, 860 F.2d 801, 809 (7th Cir.1988) (quoting *United States v. Cerone*, 830 F.2d 938, 949 (8th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988)), *cert. denied*, —— U.S. ——, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989).

In this case, the government met its burden of proof under Rule 901. First, Agent Olson's testimony establishes that he was at least minimally familiar with the defendant's voice. The agent testified that he had verbal contact with Mr. Degaglia on several occasions for periods of up to one and one-half hours.[2] Agent Olson further testified that Mr. Degaglia has a very distinctive voice. *See* Fed.R.Evid. 901(b)(4). Based on his familiarity with the defendant's voice, Agent Olson positively identified one of the voices on the tape as belonging to Mr. Degaglia.[3] *See* Fed.R.Evid. 901(b)(5). Nothing more was required.[4]

■ With regard to Mr. Degaglia's claim that the identification process was impermissibly suggestive and unreliable, we have noted, in the context of a challenge to the admission of tape recorded conversations, that identification procedures are unduly suggestive if they give rise to "a very substantial likelihood of irreparable misidentification." *Carrasco*, 887 F.2d at 806 (citations omitted). In this case, Mr. Degaglia objected to the procedures on the grounds that (1) the subpoena requiring Agent Olson's presence at trial indicated that it was the trial of John Degaglia, and (2) knowing that he was going to be called to identify the defendant's voice, Agent Olson listened to the tape recordings in-

---

**2.** *See United States v. Durrive*, 902 F.2d 1221, 1230 (7th Cir.1990) (tape recording of telephone call properly admitted based on positive identification by officer who spoke with defendant for a total of approximately three hours prior to trial); *United States v. Khorrami*, 895 F.2d 1186, 1194 (7th Cir.1990) (recorded phone conversations properly admitted based in part on testimony of witness who identified defendant's voice after making one call to defendant's residence and comparing voice of person who answered to voice on tapes); *United States v. Carrasco*, 887 F.2d 794, 804 & n. 17 (7th Cir.1989) (recorded conversations properly admitted where INS agent who identified defendant's voice at trial spoke to or heard defendant speak on three separate occasions for a total of almost two hours); *United States v. Shukitis*, 877 F.2d 1322, 1328 (7th Cir.1989) (proper foundation for admission of tape was laid where officer who recorded the conversation spoke to defendant twice on the phone and twice in person); *United States v. Grier*, 866 F.2d 908, 921 (7th Cir.1989) (recordings properly admitted where FBI agent who had spoken once with the defendants identified their voices on the tapes); *United States v. Vega*, 860 F.2d 779, 788 (7th Cir.1988) (tape properly admitted where identification was based upon one previous two-hour contact with defendant).

**3.** With respect to the defendant's claim that Agent Olson's identification is inherently unreliable because it was made eight months after the agent spoke with Mr. Degaglia, we note that " '[a]ttacks on the accuracy of the identification go to the weight of the evidence, and the issue is for the jury to decide.' " *United States v. Alvarez*, 860 F.2d 801, 809 (7th Cir.1988) (quoting *United States v. Cerone*, 830 F.2d 938, 949 (8th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988)), *cert. denied*, —— U.S. ——, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989); *see Vega*, 860 F.2d at 788 ("questions concerning the length of [the identifying officer's] previous contact with [the defendant] or *the time between this contact and the identification*, simply go to the weight the jury accords this evidence, not to its admissibility") (emphasis supplied).

**4.** Even assuming that Agent Olson's direct testimony is insufficient to identify Mr. Degaglia's voice, authentication may be established by circumstantial evidence. *See United States v. Puerta Restrepo*, 814 F.2d 1236, 1239 (7th Cir.1987); *see also Carrasco*, 887 F.2d at 804. Here, the government demonstrated that the June 16 telephone call was placed to Mr. Degaglia's home at a number to which he subscribed. *See Khorrami*, 895 F.2d at 1195 (recorded conversations were properly admitted where evidence established that calls originated from defendant's telephone number); *Carrasco*, 887 F.2d at 804 (recorded conversations properly admitted based, in part, on fact that telephone calls were placed to home where defendant resided); *Grier*, 866 F.2d at 921 (parties to recorded conversations were properly identified based, in part, on fact that the calls were made to the defendant's home).

volved in this case. The district court concluded that these events were not so unduly suggestive as to make the tapes inadmissible. The court also determined that, even if the process was suggestive, the government had established an adequate independent basis for Agent Olson's opinion.

We agree that the identification procedures used in this case do not give rise to "a very substantial likelihood of irreparable misidentification." *Id.* Agent Olson was familiar with the defendant's voice and described it as being very distinctive. At the government's request, Agent Olson reviewed the tape recordings made in this case and positively identified Mr. Degaglia's voice. Moreover, he did so without the aid of a transcript.[5] The fact that Agent Olson knew why he had been subpoenaed and knew what tape recordings to review for the purpose of testifying does not establish that the identification process was unduly suggestive. *See Vega,* 860 F.2d at 789 ("A request that a police officer ascertain if a particular individual's voice is on a certain tape or tapes ... cannot create the 'substantial likelihood of irreparable misidentification' we have required to be demonstrated as a prerequisite for finding other types of pretrial identification procedures 'suggestive.' "). We therefore determine, in light of the government's authentication evidence, that the district court did not abuse its discretion in admitting the recording of the June 16 conversation between Rhoda and the defendant.

2. Admissibility of evidence regarding Mr. Degaglia's possession of guns at the time of his arrest

■ The defendant claims that the district court's limited admissibility ruling concerning his possession of weapons effectively precluded him from challenging the reliability of Agent Olson's voice identification and therefore deprived him of a fair

trial. First, the district court's ruling did not preclude such a challenge; it merely required the defendant to make a strategic choice between attacking the identification and suppressing any mention that guns were found in his house at the time of his arrest. Although criminal defendants enjoy the constitutional guarantee that they will have an effective opportunity to test the accuracy of adverse evidence, "this guarantee does not include the opportunity to test the evidence 'in whatever way, and to whatever extent the defense might wish.' " *United States v. Briscoe,* 896 F.2d 1476, 1492 (7th Cir.1990) (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (per curiam)). In this case, Mr. Degaglia understandably sought to exclude evidence concerning his possession of firearms. However, that evidence was relevant if he chose to challenge Agent Olson's opportunity to become familiar with Mr. Degaglia's voice. The district court did not err by determining that the evidence was admissible for a limited purpose, even though this decision put the defendant in the position of having to choose whether it was more beneficial to his case to keep knowledge of the weapons from the jury or to attack the reliability of Agent Olson's identification. *See id.*

3. Admission of only the defendant's portion of the June 16 tape

■ Mr. Degaglia also challenges the admission of a redacted tape. Based on the defendant's objection that Rhoda's portion of the call was inadmissible because Rhoda did not testify, the district court ruled that only the defendant's portion of the tape was admissible. Mr. Degaglia first claims that admission of half the conversation was confusing to the jury and that the entire tape should have been excluded. However, we do not believe that the district court abused its discretion in admitting the redacted tape. Although the court had other

---

**5.** *Cf. Carrasco,* 887 F.2d at 806–07 (rejecting suggestiveness claim where transcripts designated who the speakers were); *Alvarez,* 860 F.2d at 809–11 (fact that agents reviewed tapes and used transcripts that identified the speakers did not render the identification process impermissibly suggestive where agents positively identified voices on tape); *United States v. Zambrana,* 841 F.2d 1320, 1339 (7th Cir.1988) (procedure not unduly suggestive where, *before* listening to tape, agent viewed a transcript listing defendant's name in the margin as the speaker).

options, *see United States v. Davis*, 890 F.2d 1373, 1379–80 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1165, 107 L.Ed.2d 1068 (1990),[6] the record reveals that it carefully reviewed the tape to arrive at a redacted version that would not confuse the jury. We shall not second-guess the trial court on this matter when the record reflects such careful attention.

 Mr. Degaglia also alleges that a word on the tape is unclear. We have noted that, "[g]enerally, tape recordings which are only partially unintelligible are admissible unless the recording as a whole is rendered untrustworthy by the unintelligible portions." *United States v. Camargo*, 908 F.2d 179, 183 (7th Cir.1990); *see also United States v. Vega*, 860 F.2d 779, 790 (7th Cir.1988); *United States v. Zambrana*, 841 F.2d 1320, 1337 (7th Cir.1988). Whether a recording is untrustworthy is left to the sound discretion of the district court. *Camargo*, 908 F.2d at 183; *Zambrana*, 841 F.2d at 1337. Based on our review of the record, including the tape, we cannot say that the recording was so untrustworthy as to be inadmissible. *See Vega*, 860 F.2d at 790–91 ("discretion was properly exercised in admitting the tapes because the tapes were generally audible, and, even if inaudible in parts, such inaudibility would go only to the weight, a jury question, rather than the admissibility, of the identification evidence and the tapes themselves"). Moreover, in this case, the jurors specifically were instructed that there was a dispute over a single word on the tape and that it was their job to determine what had been said. *See United States v. Alvarez*, 860 F.2d 801, 812 (7th Cir.1988) (no error to admit tapes where parties disputed the content of the conversation: "The conflicting testimony of [each parties' witness as to what had been said] ... was weighed and assessed by the jury in reaching its verdict. Such a credibility determination is uniquely for the jury."). Thus, we conclude that the district court properly exercised its discretion in admit-

6. In *Davis,* the court held, under similar circumstances, that the entirety of the conversation was admissible where the defendant's statements are offered as verbal acts or admissions

ting the June 16 recording in redacted form.

### Conclusion

For the foregoing reasons, the district court's evidentiary rulings were not erroneous. Accordingly, the defendant's conviction is affirmed.

AFFIRMED.

and the third party's statements are necessary to place the defendant's statements in context. 890 F.2d at 1380. Appropriate limiting instructions were given by the district court. *Id.*