978 F.2d 1261
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Leon R. THOMAS, Plaintiff-Appellant,
v.
R.E. CABANAW, T. Goodlow, S. Hackey, and Joseph Furore,
Defendants-Appellees.
 No. 91-2173.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 21, 1992.*
Decided Oct. 23, 1992.
 
 Before BAUER, Chief Judge, CUMMINGS, Circuit Judge and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Leon Thomas is an inmate at the Indiana State Prison in Michigan City, Indiana. Thomas sued prison officials for violating his Eighth and Fourteenth Amendment rights. 42 U.S.C. § 1983. By the consent of the parties the case was tried before a magistrate judge, who found for the defendants. Thomas appeals and we affirm.
 
 I. BACKGROUND
 
 2
 In 1989 Thomas was transferred to the Michigan City prison from another Indiana facility. At the time he was in the midst of a three-year term of disciplinary segregation, and accordingly was placed in the New Service Building (NSB), a disciplinary segregation unit. A few months later he was transferred to another segregation unit, the west side of the I Cellhouse Detention Unit (IDU). On the same day he was transferred Thomas was robbed and beaten by two other inmates, and for his protection was put back in the NSB.
 
 
 3
 After another month Captain Cabanaw, who ran the segregation units, had Sgt. Bullington tell Thomas that he could return to the IDU, but only on the east side. Thomas informed Cabanaw and Bullington that he did not want to go to the east side because he would be in danger there; fellow gang members of the inmates who had robbed him lived on the east side of the IDU. Cabanaw told Thomas that he could either go to the east side or stay in the NSB, but nowhere else; it was his choice. Thomas chose the east side of the IDU, where inmates had many more privileges than in the NSB.[1]
 
 
 4
 Less than an hour after he returned to the east side an inmate attacked Thomas from behind, stabbing him several times. After the first thrusts the assailant dropped his knife, which Thomas scooped up to defend himself. Before he could reach safety, however, the inmate obtained another knife and resumed the stabbing. Guards appeared and maced the combatants. Captain Cabanaw arrived soon thereafter and, upon searching Thomas, found a knife concealed in the lining of his jumpsuit. A conduct report charged Thomas with the offense of "fighting with weapons" and the Conduct Adjustment Board imposed a year of disciplinary segregation, consecutive to the existing segregation sentence.
 
 
 5
 Thomas sued under § 1983, charging (1) that Cabanaw violated his Eighth Amendment rights by failing to protect him from the stabbing; (2) that Lt. Goodlow deprived him of due process by sitting on the CAB panel that disciplined him for the knife fight, in violation of prison rules; and (3) that a drawing of the IDU's east side was inaccurate and should not have been admitted at trial.
 
 II. DISCUSSION
 
 6
 To establish an Eighth Amendment violation for a failure to protect, a prisoner must prove both that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and that the officials acted " 'with a sufficiently culpable state of mind.' " Hudson v. McMillian, 112 S.Ct. 995, 999 (1992), quoting Wilson v. Seiter, 111 S.Ct. 2321, 2326 (1991). Assuming that the officials' conduct here was sufficiently harmful because Thomas's "physical safety was compromised while housed at the [IDU]," James v. Milwaukee County, 956 F.2d 696, 699 (7th Cir.), cert. denied, 1992 U.S.LEXIS 5613 (1992), his claim still falters because he cannot show the defendants acted with the requisite intent.
 
 
 7
 Thomas maintains that he notified Cabanaw and Goodlow about death threats he had received and the dangers of placing him on the east side, and that their laissez-faire response to his pleas amounts to deliberate indifference toward his safety. See McGill v. Duckworth, 944 F.2d 344, 349 (7th Cir.1991) ("A prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety."), cert. denied, 112 S.Ct. 1265 (1992). But the magistrate judge found as a fact that Goodlow was not aware of specific threats toward Thomas, Memorandum and Order, Appellee's Appendix at 9, and we have no reason to believe this was erroneous. See Fed.R.Civ.P. 52(a). And while Cabanaw knew that Thomas was afraid to go to the east side (though he was unaware of any death threats), Cabanaw gave Thomas the choice to stay where he was or move to the east side and face the suspected risks. Thomas admits that he was given an option and picked the east side, but contends that it was a Hobson's choice because inmates on the east side have many more privileges than those in the NSB, even though both are disciplinary units. Hobson's choice or not, the important point is that Cabanaw responded to Thomas's fears and gave him an opportunity to avoid danger by staying in the NSB. This responsiveness demonstrates that Cabanaw did not act with actual intent to harm Thomas or deliberate indifference toward his safety, meaning there was no Eighth Amendment transgression. See McGill, 944 F.2d at 350 (no Eighth Amendment violation where "to the extent the defendants knew of threats they took immediate action to remove McGill from the general population.") Further, Thomas cannot prevail on his assertion that Goodlow and Cabanaw watched the fight and did nothing to protect him. The magistrate judge found that neither was present during the scrap, and the finding was not clearly erroneous. Memorandum and Order, Appellee's Appendix at 10-11.
 
 
 8
 Thomas's next claim is that Goodlow deprived him of due process by sitting on the CAB panel that sentenced him for fighting with weapons. Since Goodlow witnessed the stabbing, Thomas says, his presence on the CAB panel broke a prison rule which provides that "[n]either the reporting employee nor the Screening Officer on a particular Conduct Report may participate as a member of the hearing committee or as a Hearing Officer." Indiana Dept. of Correction Adult Disciplinary Policy: Procedures, p 23(A)(1) (1990). But Goodlow was not the reporting employee or the Screening Officer on the Conduct Report, so the rule was not violated. Moreover, since the magistrate judge found that Goodlow did not witness the stabbing or play any role in the event that might have put his impartiality into question, Thomas was not deprived of his right to an unbiased decisionmaker. Compare Merritt v. De Los Santos, 721 F.2d 598, 600-01 (7th Cir.1983) (decisionmaker was not impartial where he had helped subdue the prisoner after the incident at issue and co-authored a complete report on the outburst).
 
 
 9
 Finally, Thomas challenges the admission of a handwritten diagram of the layout on the IDU's east side, which was introduced to show where Goodlow was during the fight and why he could not see the scuffling. Thomas claims the drawing was inaccurate. In truth it was slightly inaccurate, but the court noted this inaccuracy and admitted the evidence anyhow because the defect was irrelevant: the drawing misrepresented the view from the elevator, while the question before the court was Goodlow's view from the CAB hearing room on the opposite side of the building. Trial Transcript at 158-59. Such rulings are reviewed for an abuse of discretion, and there was no abuse here. United States v. Degaglia, 913 F.2d 372 (7th Cir.1990).[2]
 
 
 10
 For the foregoing reasons, the decision of the district court is
 
 
 11
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 Prisoners in the NSB are locked in their cells for all but thirty minutes each day, during which time they may exercise in the hallway and take a shower. In the IDU, in contrast, prisoners get an hour of outdoor recreation, along with contact visits and commissary and telephone privileges. Memorandum and Order, Appellee's Appendix at 2-3
 
 
 [2]
 Thomas's claim that the one-year disciplinary sentence the CAB imposed for fighting with weapons was illegal was adequately addressed by the magistrate judge, and need not be rehashed here. See Appellee's Appendix at 20-24