**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marcus HULL, Defendant–Appellant.**

No. 01–2904.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 6, 2003.

Decided Aug. 12, 2003.

Before POSNER, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

## ORDER

Marcus Hull was convicted of conspiracy to possess and distribute crack cocaine, and possession and distribution of crack cocaine. On appeal, Hull challenges the district court's admission of certain testimony and audio tapes, its jury instructions regarding the quantity and type of drug involved in the offense, and several of the court's sentencing determinations. Because we find that the district court did not err in any of its decisions, we affirm Hull's convictions and sentence.

## I. BACKGROUND

Marcus Hull and his wife, Ama Opong Duah, were drug dealers in Gary, Indiana. The FBI used an informant, Lashandra Valladares, to set up controlled buys from Hull. During these controlled buys, the informant entered Hull's vehicle to purchase the drugs or went to Hull's apartment to receive the drugs from Hull or Duah through an apartment window. The

buys were scheduled during telephone conversations recorded by FBI Special Agent Bradley Bookwalter, and the sales were observed and monitored by Bookwalter and Indiana police officers.

After leaving the apartment that he and Duah rented, Hull was arrested when he arrived for one of the controlled buys. Believing Hull had swallowed the drugs intended for the transaction, the officers took him to a hospital emergency room, where they found 3.6 grams of crack cocaine in his hand when he unclenched his fists. Following his arrest, Hull denied living at the apartment and that there were drugs in the apartment. However, he admitted that his two children lived there and that he had a loaded shotgun in the residence to protect them. During a search of the apartment, the agents seized 27 grams of crack cocaine, a phone bill for the cellular phone that the informant had called, a receipt for Hull's vehicle, $18,000 in U.S. currency, a loaded pistol-grip shotgun above the bedroom door, a box of ammunition in the living room, and paraphernalia used by Hull to distribute the drugs.

At trial, the FBI informant did not testify about the controlled buys. Instead, Agent Bookwalter testified about his observations of the transactions, including the informant's shouts of "C" or "Coolie" when arriving at the apartment to purchase the drugs, and the tape recordings of the telephone conversations were offered into evidence. Hull's wife (who had pled guilty and agreed to cooperate with the government in exchange for a "time served" sentence) also testified against Hull. She acknowledged that Hull was known as "C" and "Coolie," admitted that

she and Hull had sold drugs together for over a year and provided information about the typical quantities of their drug sales. She also testified that, with Hull's knowledge and assent, she had filed a false claim to recover the $18,000 seized during the apartment search,[1] and at Hull's direction had claimed full responsibility for the drugs in an effort to shield Hull from liability at trial or sentencing.

Hull represented himself for a significant portion of the trial and made few legitimate objections, even when prompted by the district judge. On appeal, he now challenges the introduction of much of Agent Bookwalter's testimony as hearsay, and the introduction of the audiotapes, which he claims were not authenticated. Hull did not make these objections at trial, though he did assert that he was not the person speaking with the informant on one of the tapes. Hull also challenges several of the district court's sentencing decisions, arguing that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the drug quantity calculation was erroneous, his sentence was improperly enhanced for obstruction of justice and possession of a firearm, and the court provided inadequate reasons for sentencing him at the top end of the sentencing range.

## II. ANALYSIS

### A. Agent's Testimony and the Controlled Buys

■■■ Hull argues that the district court abused its discretion by permitting the government to prove its case by relying on hearsay statements of the absent informant.[2] We review a district court's

---

1. When making the claim, she stated that she was the innocent owner of the money and that it was not drug money. Her testimony at trial indicated that $15,000 of the money was

the proceeds of drug sales, and that only $3,000 was from her tax return.

2. Hull also objects to the introduction of the drugs obtained during the controlled buys,

decision to admit evidence for an abuse of discretion if a defendant has objected at trial. *United States v. Bonner,* 302 F.3d 776, 780 (7th Cir.2002); *United States v. Montani,* 204 F.3d 761, 765 (7th Cir.2000). When the defendant fails to make any objection, or when the objection does not fairly raise the issue claimed on appeal, *United States v. Robinson,* 177 F.3d 643, 646–47 (7th Cir.1999), the point is forfeited and the defendant may prevail on appeal only upon a showing of plain error. *Bonner,* 302 F.3d at 780; *United States v. Curtis,* 280 F.3d 798, 801 (7th Cir.2002). Here, Hull did not object to this testimony at trial, even when he was represented by counsel,[3] so our review is for plain error.

"A plain error is one that results in an actual miscarriage of justice, which implies that the defendant probably would not have been convicted but for the erroneously admitted evidence." *United States v. Nolan,* 910 F.2d 1553, 1561 (7th Cir.1990) (citation and quotation marks omitted). The defendant must demonstrate that the plain error affected his substantial rights as well as "the fairness, integrity or public reputation of judicial proceedings." *United States v. McGill,* 32 F.3d 1138, 1142 (7th Cir.1994). We will reverse for plain error only when "convinced it is necessary to avert an actual miscarriage of justice." *United States v. Maholias,* 985 F.2d 869, 877 (7th Cir.1993).

Hull contends that the district court improperly admitted hearsay by allowing Agent Bookwalter to testify that during the controlled buys the informant called out "C" or "Coolie," to which a person (later identified as Hull) responded.[4] Federal Rule of Evidence 801 defines hearsay as an out-of-court statement offered to prove the truth of the matter asserted. Agent Bookwalter's testimony about what the informant said during the controlled buys was not hearsay because it was not offered for the truth of the matter asserted (that it was "C" or "Coolie" who was being called). Rather, it was offered as a contextual description of events, including the words that were spoken, that Agent Bookwalter personally observed while monitoring the controlled buys. Even if we considered Agent Bookwalter's testimony to be hearsay, however, there would be no plain error, because there was substantial evidence that sufficiently sup-

arguing that the agent got the drugs from the informant, not Hull. Hull forfeited this argument because he failed to object to the introduction of the drugs at trial. On appeal, he has failed to develop this argument by citing any controlling or persuasive authority, and his objection is therefore waived. *See, e.g., United States v. South,* 28 F.3d 619, 629 (7th Cir.1994); *United States v. Windom,* 19 F.3d 1190, 1198 (7th Cir.1994).

3. Hull represented himself for part of the trial, during which time the district court repeatedly asked if he wanted to object to the government's introduction of evidence. Part way through trial, Hull turned his defense over to his standby counsel, following the district court's strong suggestion that he do so ("You know, Mr. Hull you're not doing very well. You would be better served if you would let this lawyer, who is a highly skilled lawyer, try this lawsuit on your behalf. You're making a big mistake.").

4. Hull also objects to Agent Bookwalter's testimony that the informant identified Hull as "C" or "Coolie" from a photographic line-up. We have held that such testimony is inadmissible. *See, e.g., United States v. Williams,* 133 F.3d 1048, 1051 (7th Cir.1998). This testimony was elicited by Hull, however, on cross-examination (and later explored briefly by the government on re-direct), and it is not the district court's job to *sua sponte* serve as the gatekeeper of the defendant's proffered evidence. Furthermore, Hull's cellular phone voicemail states that callers have reached "Coolie," from which the jury could determine that it was Hull's voice on the recording, *see United States v. Khorrami,* 895 F.2d 1186, 1195 (7th Cir.1990), and Duah testified that he was known as "C" or "Coolie."

ported Hull's conviction. Hull was arrested during one of the controlled buys with a significant amount of crack cocaine on his person, and his wife testified that she and Hull had transacted the sales in question and had sold large quantities of crack cocaine for more than a year. Accordingly, any error in the introduction of Agent Bookwalter's testimony does not warrant reversal.

### B. Admission of the Audio Tapes

 Hull challenges the admission of the audio recordings of the telephone conversations that precipitated the controlled buys, arguing that (1) the government did not prove that the conversations are true and accurate recordings of the conversation, and (2) he was not identified as the other voice on either of the tapes. Hull explicitly waived any objection to the first tape when it was offered into evidence, but then challenged the identity of the speaker by stating "it was other people involved in that conversation." Because he was representing himself *pro se* when the first tape was offered, we consider his objection sufficient to preserve the question of the speaker's identity on the first tape. *Bonner*, 302 F.3d at 780. However, Hull made no objections to the accuracy of either tape at trial, and only objected to the second tape (through his attorney) by claiming it contained hearsay (it was admitted pursuant to a stipulated limiting instruction indicating that the tape was only offered to put Johnson's comments on the tape in proper context). Hull's failure to object to the accuracy of either tape and the identity of the speaker on the second tape necessitates our review of these issues only for plain error. *Robinson*, 177 F.3d at 646–47.

 Before evidence may be introduced, the party requesting its admission must provide proof "sufficient to support a finding that the matter in question is what its

proponent claims." Fed.R.Evid. 901(a). With regard to recorded conversations, " '[i]t is a well-settled principle of law that the party attempting to admit a tape recording into evidence must prove, by clear and convincing evidence, that the tape is a true, accurate, and authentic recording of the conversation, at a given time, between the parties involved.' " *United States v. Degaglia*, 913 F.2d 372, 375 (7th Cir.1990) (quoting *United States v. Faurote*, 749 F.2d 40, 43 (7th Cir.1984)). Here, the government did not offer testimony of the informant to verify the accuracy of the recordings, it offered only the testimony of Agent Bookwalter, who admitted that he had only heard the informant's half of the conversation. Nevertheless, authentication may be established by circumstantial evidence. *See, e.g., United States v. Carrasco*, 887 F.2d 794, 804 (7th Cir.1989); *United States v. Puerta Restrepo*, 814 F.2d 1236, 1239 (7th Cir.1987). The government demonstrated that the phone calls were placed to a cellular telephone that Hull used and the speaker identified himself as "Coolie." Duah testified that Hull used the phone and was known as "Coolie," Hull was observed consummating the transactions as they had been planned during the calls with the informant, and he was arrested while one transaction was in progress. This is sufficient to establish the authenticity of the recordings. *See Degaglia*, 913 F.2d at 375; *see also Khorrami*, 895 F.2d at 1195; *Carrasco*, 887 F.2d at 804. Furthermore, Hull does not assert and provides no evidence that the tapes have been altered or are somehow amiss. Because there was ample other evidence to substantiate his conviction, we conclude that his challenge to the accuracy of the tapes does not establish plain error.

 As for Hull's challenge to the speaker's identity, the standard of familiarity necessary to identify the voices of

participants in conversations recorded on tape is clear. Federal Rule of Evidence 901(b)(5) permits voice identification to be made "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." *Degaglia*, 913 F.2d at 376 (citations omitted). "Minimal familiarity is sufficient for admissibility purposes." *Id.* (quotations omitted). Here, Hull represented himself for a significant portion of the trial, and made speaking objections throughout. Under these circumstances, the jury had sufficient familiarity with his voice to determine on its own whether it was Hull on the other end of the transmissions. *See Khorrami*, 895 F.2d at 1195; *see also Ricketts v. City of Hartford*, 74 F.3d 1397, 1409–11 (2nd Cir.1996); *United States v. Sliker*, 751 F.2d 477, 499–500 (2d Cir.1984).

C. *Apprendi* Challenge

 Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Hull argues that the 365–month sentences imposed on his drug convictions were unconstitutional because the jury was not properly instructed on finding the nature and quantity of drugs beyond a reasonable doubt. Hull did not raise this issue before the district court, so our review is for plain error.

 Before a defendant can be sentenced to a term of imprisonment above the default statutory maximum provided in § 841(b)(1)(C) or (D), *Apprendi* requires that a drug type and amount sufficient to trigger the higher statutory maximums of § 841(b)(1)(A) or (B) should be specified in the indictment and must be found by the trier of fact using the reasonable doubt standard. *See, e.g., United States v. Bjorkman*, 270 F.3d 482, 492 (7th Cir. 2001); *United States v. Nance*, 236 F.3d 820 (7th Cir.2000). Hull's *Apprendi* claim requires close attention because his sen-

tences of just over 30 years on Counts I and V exceeded the default statutory maximum sentence of 20 years contained in 21 U.S.C. § 841(b)(1)(C), which applies when quantity is not at issue. Before his sentence could fall between 20 and 40 years, as provided in 21 U.S.C. § 841(b)(1)(B), he had to be convicted of conspiring to possess with the intent to distribute and possessing with the intent to distribute "5 grams or more of a mixture or substance ... which contains cocaine base...." 21 U.S.C. § 841(b)(1)(B)(iii).

The indictment charged a quantity of crack cocaine in excess of five grams for both counts and there was never any question that crack cocaine was the drug at issue in the case. The instruction on Count I described the conspiracy charged as "conspiracy to possess with intent to distribute in excess of 5 grams or more of a mixture and substance containing a detectable amount of cocaine base." While the instruction on Count V did not reference the 5 gram quantity, the verdict forms for both Count I and Count V required the jury to decide whether the quantity was in excess of or less than 5 grams of cocaine base. In addition, the instructions for both counts properly stated that the government had the burden of proving Hull's guilt beyond a reasonable doubt, and the verdict forms for both counts provided that guilt was found beyond a reasonable doubt. While the instructions, particularly on Count V, could have been clearer on this point-the Count V instruction should have referenced the 5 grams-we find that on the whole the instructions adequately described the facts the jury was required to find beyond a reasonable doubt. And because the verdict forms required the jury to choose whether the crack conspiracy or possession was for more than 5 grams, any error in the instructions was harmless. Fur-

thermore, we believe it is clear beyond a reasonable doubt that a properly instructed jury would have found Hull had conspired to possess and had possessed, with the intent to distribute, in excess of 5 grams of crack cocaine. The evidence introduced at trial showed that Hull had sold 4.1 grams of crack cocaine to the informant, his wife had sold 1.1 grams, Hull had 3.6 grams of crack cocaine in his hand when he was arrested, and the officers found 27 grams of crack cocaine in his apartment. Therefore, Hull's sentence did not violate the due process protections outlined in *Apprendi*.

### D. Sentencing Guideline Calculations and Enhancements

■ Hull also raises several challenges to the district court's sentencing calculations and imposition of guideline enhancements. He first asserts that the district court erroneously found a drug quantity in excess of 500 grams of crack cocaine by double-counting the drugs sold that relate to the money seized from his apartment. We review factual determinations of the quantity of drugs involved in an offense for the purposes of sentencing under the clearly erroneous standard. *United States v. Williams*, 272 F.3d 845, 852 (7th Cir. 2001). The Sentencing Guidelines provide that when an amount of drugs seized "does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1, cmt. n. 12. Here, the district court found the quantity by relying primarily on the presentence investigation report (PSR), which estimated Hull was responsible for 567 grams of crack cocaine. This determination was based on the drugs involved in the controlled buys, the drugs found in

Hull's hand when he was arrested and those seized from the apartment, the amount of drugs that corresponded to the money seized at the apartment, and Duah's testimony about the amount of drugs she and Hull sold during the time they were together before Hull's arrest (over one year). While Duah's testimony was inconsistent,[5] even using her most conservative estimate (dealing one ounce every three weeks for several months before she joined the enterprise) puts Hull over the 500 grams necessary to support his sentence. Therefore, even if Hull is correct that it was erroneous to rely on both the drugs that correspond to the money seized and the amounts estimated by Duah's testimony, it was harmless error. *See, e.g., United States v. Pigee*, 197 F.3d 879, 893 (7th Cir.1999); *United States v. Durham*, 211 F.3d 437, 444 (7th Cir.2000).

■ Hull next contends that the district court improperly imposed a sentence enhancement for obstruction of justice, under Guidelines section 3C1.1, based on the PSR's conclusion that Hull persuaded Duah to file a forfeiture claim for the $18,000 seized from the apartment and counseled her to falsely claim ownership of all the drugs. With respect to the false claim basis for the enhancement, we believe it was erroneous for the court to find that Hull counseled Duah to file the false claim. Duah testified that she filed the claim with Hull's knowledge and that Hull did not advise her against doing so. This is insufficient to find that he counseled her to obstruct justice, as the Government alleged in the PSR. However, the evidence does show that Hull counseled Duah to claim full responsibility for the drugs in an

---

**5.** Duah's testified three times about the quantities involved, and her estimates of their drugs sales were inconsistent; she testified once that she and Hull sold an ounce a week, another time that it was an ounce every two weeks, and yet another time that it was an ounce every one to three weeks.

effort to help Hull avoid liability for the drugs or reduce his exposure at sentencing.[6] Because this conduct occurred during the investigation and prosecution of his case, and "related to ... the defendant's offense of conviction and any relevant conduct," U.S.S.G. § 3C1.1, any error with respect to the false claim was harmless. It was therefore proper for the district court to apply the obstruction of justice enhancement.

▪▪▪ Hull's final two arguments lack merit and require little comment. First, he claims it was error to impose a gun enhancement for the loaded shotgun found above the bedroom door in the apartment from which he dealt drugs. However, because it is not clearly improbable that the weapon was possessed during the offense, *Pigee*, 197 F.3d at 893; *United States v. Atterson*, 926 F.2d 649, 663 (7th Cir.1991), and because Hull presents no evidence that it was not, the district court did not commit clear error by imposing the enhancement. His final claim is that the district court did not provide adequate reasons for sentencing him to the maximum guideline sentence, as required by 18 U.S.C. § 3553(c)(1), and only recited the generalized factors outlined in the statute. While a sentencing judge is required to state in open court his reasons for imposing a particular sentence within the range, we have refused to remand for resentencing when the judge neglects to provide reasons but the defendant raises no objection at the time. *See United States v. Caicedo*, 937 F.2d 1227, 1236 (7th Cir. 1991); *see also United States v. Burns*, 128 F.3d 553, 556 (7th Cir.1997); *United States v. Mojica*, 984 F.2d 1426, 1444 (7th Cir.1993). Here, while the district court's

recitation of the statutory factors may have been insufficient to provide for meaningful review, Hull's failure to voice a timely objection below (which no doubt would have prompted immediate correction of the oversight), particularly in light of the district court's explicit invitation to do so, waives this argument on appeal. *Caicedo*, 937 F.2d at 1236; *see also United States v. Strozier*, 981 F.2d 281, 282 n. 1 (7th Cir. 1992).

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**6.** Duah testified that she and Hull determined that she should claim full responsibility for the drugs because, unlike Hull, she did not have a criminal history and therefore she would receive a shorter sentence than he would receive if convicted for the same quantity.