**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David LUEDDEKE,**
**Defendant–Appellant.**

**No. 89–1988.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1990.

Decided July 27, 1990.

*Civil RICO Task Force of the ABA Section of Corporation, Banking and Business Law 55*

(1985)).

Thomas M. Durkin, Robert S. Rivkin, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellee.

Thomas D. Decker, Richard H. McLeese, Decker & Associates, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, CUDAHY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

The appellant, David Lueddeke, after twice lying to and producing false documents before a grand jury, pled guilty to one count of perjury (18 U.S.C. § 1623) and one count of obstruction of justice (18 U.S.C. § 1503). Lueddeke, a first offender, was sentenced to 26 months in prison along with 3 years of supervised release and was fined $10,100. He remains incarcerated during the pendency of this appeal.

Lueddeke appeals his sentence on two grounds. First, he contends that because the Sentencing Guidelines do not provide for probation in his case they are inconsistent with their enabling legislation and are, hence, invalid. Second, Lueddeke claims that the district court erred in applying the Sentencing Guidelines to the facts of his case. Neither of these arguments has merit. We therefore affirm the sentence imposed by the district court.

## I. Facts

The facts of this case need little elaboration. The appellant, David Lueddeke, paid money to several Ohio State University football players in order to induce them to sign representation agreements with him. These payments were illegal. A federal grand jury uncovered a copy of an undated and unexecuted representation agreement between Lueddeke and Ohio State University football player Chris Carter, and subpoenaed Lueddeke. Lueddeke was told, before taking the stand, about the document in the possession of the grand jury. He was also informed that the government had no evidence that he had done anything wrong. Nevertheless, Lueddeke appeared before the grand jury and lied.

During the week following Lueddeke's appearance before the grand jury, the government discovered evidence that proved Lueddeke's testimony to be false, whereupon the government informed Lueddeke that he was the subject of a serious criminal investigation and that he would be prosecuted for perjury. Lueddeke was given an opportunity to appear before the same grand jury and correct his misstatements. Instead, at his second appearance before the grand jury, Lueddeke committed perjury again and also produced false documents in support of his deceit. After obtaining counsel and talking with prosecutors about their case against him, however, Lueddeke eventually corrected his perjurious statements and pled guilty to committing perjury and to obstructing justice. He was sentenced to 26 months in prison with 3 years of supervised release to follow and was fined $10,100. Lueddeke was also ordered to undergo psychiatric treatment.

## II. Analysis

### A. The Sentencing Guidelines and Their Enabling Legislation

■ Lueddeke's first argument on appeal is that the Sentencing Guidelines are inconsistent with their enabling legislation and are, hence, invalid insofar as they preclude, absent a downward departure, a probationary sentence for a first offender who has committed the nonviolent offenses of perjury and obstruction of justice. He proffers a myriad of precedential, comparative and interpretive arguments in support of this contention, all of which have been considered. Few warrant discussion.

Lueddeke points specifically to the enabling language of 28 U.S.C. § 994(j) in which Congress provided that the Sentencing Guidelines should "reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." Lueddeke argues that the failure of the Guidelines to allow for probation in his case renders the Guidelines inconsistent with the quoted enabling language. This contention has already been rejected by several circuits. *United States v. Belgard*, 894 F.2d 1092, 1100 (9th Cir.1990) (holding that the Sentencing Commission followed the congres-

sional directive of § 994(j)); *United States v. Erves*, 880 F.2d 376, 380 (11th Cir.1989) (same); *United States v. White*, 869 F.2d 822, 827 (5th Cir.1989) (holding that the Commission acted within the broad discretion delegated to it and that the Guidelines' restriction of probation does not violate due process). We accept the analyses of these circuits.

In fact, several persuasive arguments lead to the conclusion that the Guidelines are not inconsistent with their enabling legislation. First, it should be pointed out that the Guidelines do, on balance, reflect the "general appropriateness" of imposing probation in less serious cases. As a district court recently noted, the "Sentencing Table (Sentencing Guidelines at 5.2), when read with the probation guidelines (§ 5B1.-1), permits probation without a confinement condition as a Guidelines sentence for the first six offense levels for a first offender, and permits probation with a confinement condition as a Guidelines sentence for four additional offense levels." *United States v. Macias–Pedroza*, 694 F.Supp. 1406, 1417–1418 (D.Ariz.1988). This means that a first offender convicted of a nonserious offense will generally be sentenced to some term of probation.

Second, in the case before us, the Guidelines are consistent with § 994(j)'s requirement that probation be generally available to first offenders in "nonserious" cases. Lueddeke argues that he should have received a sentence of probation, in part, because the offenses of perjury and obstruction of justice are not "serious" within the meaning of 28 U.S.C. § 994(j) and other federal felony statutes. This provision, as noted earlier, urges probation for a first offender who has not "been convicted of a crime of violence or an *otherwise serious offense.*" (emphasis added). We think it beyond question, however, that lying to a grand jury *twice* as well as producing false documents in support of one's deceit are

very "serious" crimes.[1] The fact that Lueddeke's actions did not involve any overt violence is of no moment. Our judicial system is responsible for administering criminal laws aimed at social control. Hence, we consider crimes that decrease the ability of the courts and grand juries to get at the truth and weed out illegality to be especially insidious. We therefore reject Lueddeke's assertion that his crimes were not sufficiently "serious" within the meaning of federal criminal law. *But see, United States v. Brewer*, 899 F.2d 503 (6th Cir.1990) (holding that the facts surrounding a crime of embezzlement dictated a finding that the crime was not "serious").

Moreover, as the government points out, "the argument that the Guidelines as promulgated contravene congressional intent is fatally weakened by the fact that the Guidelines became effective only with the consent of Congress." Appellee's Brief at 13. This fact shows that Congress itself thought that the Guidelines were not inconsistent enough with its mandate on probation so as to require change. In addition, Congress, of course, has the continuing ability, as well as the authority, to disapprove or modify any aspect of the Guidelines it chooses. *See* 28 U.S.C. § 994(p). For all these reasons, we conclude that no amount of *noscitur a sociis* (interpreting words by reference to other associated words or phrases) urged by Lueddeke can escape the conclusion that the Sentencing Guidelines comport with their enabling statute in this case.

### B. Application of the Sentencing Guidelines

Lueddeke also challenges the district court's application of the Sentencing Guidelines to his case. More specifically, Lueddeke claims that the district court erred: (1) by adjusting his base offense level upward 3 levels for substantially interfering with the administration of justice; (2) by

---

**1.** *See also* Introduction 4(d) of the Sentencing Guidelines (referring to the fact that, before the Guidelines, courts often sentenced an offender to probation in an inappropriately high percentage of cases involving white collar economic crimes). We will not contribute to this dispari-

ty by holding that a white collar offender convicted of committing perjury and obstructing justice should be allowed to escape confinement because his crimes were not as "serious" as others.

adjusting his base offense level upward another 2 levels for obstructing the administration of justice; and (3) by failing to adjust his base offense level downward 2 levels for the acceptance of responsibility.

■ We begin our analysis of these points by noting that "so long as the information which the sentencing judge considers has sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence." *United States v. Miller,* 891 F.2d 1265, 1270 (7th Cir.1989), *quoting United States v. Marshall,* 519 F.Supp. 751, 754 (D.Wis.1981), *aff'd,* 719 F.2d 887 (7th Cir.1983). Further, we note that the district court's findings of sentencing facts will not be disturbed absent clear error. 18 U.S.C. § 3742(e); *United States v. Jones,* 900 F.2d 512, 521 (2d Cir.1990) (substantial interference with the administration of justice finding reviewed for clear error); *United States v. Jordan,* 890 F.2d 968, 972 (7th Cir.1989) (obstruction of justice and acceptance of responsibility findings reviewed for clear error). After considering Lueddeke's challenges against the reasons proffered by the district court and the evidence produced at Lueddeke's sentencing hearing, we are left with the firm conviction that the district court's findings are correct.

■ More specifically, we conclude that the district court's finding that Lueddeke's initial perjury had substantially interfered with the administration of justice under Guideline § 2J1.3(b)(2) was fully supported by the facts. The district court relied on

Application Note 1 to that Guideline, which defines "substantial interference with the administration of justice" as, in part, conduct that results in "the unnecessary expenditure of substantial governmental or court resources." Special Agent George Randolph of the FBI testified, for example, that, as a result of Lueddeke's perjury, he and another government officer spent a full two weeks trying to sort out the truth. See Excerpt from Sentencing Hearing, Appellant's Appendix at 2. Hence, the district court could easily have found that Lueddeke's initial perjury resulted in the "unnecessary expenditure of substantial governmental resources."

■ Lueddeke also contends that the district court improperly adjusted his base offense level upward an additional 2 levels under Guideline § 3C1.1 (for obstructing the investigation of the initial perjury offense by continuing to lie to the grand jury and by producing false documents before the grand jury) because such an adjustment was neither appropriate nor available in a case of multiple acts involving the same kind of misconduct.[2] Revised application Note 4 to Guideline § 3C1.1 clearly provides, however, that when a defendant is convicted of perjury or another obstruction offense, the 2 point upward adjustment for obstruction can be applied where "a significant further obstruction occurred during the investigation or prosecution of the obstruction offense itself." The facts of this case show that Lueddeke, after being informed that he was suspected of perjury and that he would be prosecuted, lied

---

**2.** Lueddeke also asserts that the 2 level upward adjustment for obstructing justice was inappropriate because the indictment did not specifically allege that he had obstructed a perjury investigation, but rather alleged only that he had impeded the investigation of his relationship with Ohio State University football player Chris Carter. Lueddeke argues that the terms of the charge should control his sentence, adding, in the alternative, that the 2 level upward adjustment was improper because two adjustments for the same kind of behavior amount to "double counting." We reject both of these arguments.

Even though the Guidelines may have created a "charge offense" system, a district judge is not bound to the charges in the indictment on sen-

tencing. Indeed, the Guidelines specifically allow for a sentencing judge to calculate a sentence based on conduct that is not charged, but that relates to "the same course of conduct"—so long as evidence of the related conduct is sufficiently reliable. Sentencing Guideline § 1B1.3(a)(2). If a district court can do this, it can certainly sentence someone based on facts the indictment is premised on. Further, a second adjustment for obstructing justice (on top of an adjustment for the substantial interference with the administration of justice) does not amount to "double counting" as the Guidelines clearly call for two adjustments in a case where, as here, a defendant interferes with one investigation and then also interferes with a resulting investigation of the interference.

to the grand jury a second time and also produced false documents to help lend some credence to his falsehoods. A copy of these false documents is included in the Appellee's Appendix at 4–5. Hence, we find this adjustment to be amply supported by the evidence as well.

■ Lueddeke also argues that his sentence should have been adjusted downward because he accepted responsibility for his actions. What the appellant did here cannot properly be called the "acceptance of responsibility." Lueddeke pled guilty only after being confronted with evidence of his perjury. In any event, Application Note 4 to Guideline § 3E1.1 points out that an enhancement for the obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." In addition, Application Note 5 to this Guideline specifically points out that, because the trial court is in a unique position to assess the acceptance of responsibility, the judge's determination on this point should be given *great deference* on review. (emphasis added). We therefore defer to the district court's well reasoned determination that Lueddeke had not adequately accepted responsibility for his actions.

C. The Judge's Refusal to Depart (Downward) from the Guidelines

■ Appellate review of a district court's sentence is limited to whether the sentence was "imposed in violation of law," was "imposed as a result of an incorrect application of the sentencing guidelines" or was "outside the applicable guideline range, and is unreasonable." 18 U.S.C. § 3742(e), (f). Hence, this court does not have jurisdiction to review a district court's refusal to depart downward from a sentence dictated by the Sentencing Guidelines. *United States v. Franz*, 886 F.2d 973 (7th Cir.1989). So long as a sentence is lawfully imposed and the Guidelines are applied correctly a defendant has nothing left to appeal. We therefore do not have the power to review Lueddeke's claims that the district court should have departed downward because a sentence of probation would have adequately served the purposes of criminal punishment or because of Lueddeke's allegedly diminished mental capacity.

### III. Conclusion

For all the foregoing reasons, we AFFIRM the sentence imposed by the district court upon the appellant, David Lueddeke.