**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Vielka DUDLEY, Defendant–Appellant.**

No. 90–5211.

United States Court of Appeals,
Fourth Circuit.

Argued April 11, 1991.

Decided July 25, 1991.

As Amended Aug. 19, 1991.

---

Robert Courtney Gill, II, Washington, D.C., for defendant-appellant.

Stuart A. Berman, Sp. Asst. U.S. Atty., argued (Henry E. Hudson, U.S. Atty., on brief), Alexandria, Va., for plaintiff-appellee.

Before RUSSELL and WIDENER, Circuit Judges, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.

OPINION

MICHAEL, District Judge:

This appeal is from the decision of the court below in sentencing the defendant-appellant Vielka Dudley ("Dudley") pursuant to her conviction for perjury. Before this court, the appellant makes four assignments of error, and each of these assignments will be discussed *seriatim* in the following pages. Prior to turning to these legal arguments, however, a brief recounting of the facts of this case is appropriate.

A.

On December 20, 1987, Dudley arrived at Dulles International Airport on a flight from Germany. In going through the customs process, she presented to Customs Inspector Benjamin Black ("Black") a Panamanian passport and a customs declaration. On the declaration and in verbal responses to Black's questions, Dudley stated that she was not carrying more than $10,000.00 in any type of negotiable instrument. Upon examining Dudley's handbag, Black discovered two bundles of $20 bills. Upon further questioning, the appellant continued to deny that she was carrying more than $10,000.00 in any type of negotiable instrument. Thereafter, Black searched Dudley's coat and found two more bundles of $20 bills. In short, this pattern of questioning and searching continued, and through a series of investigations of Dudley, her coat, and her companion, Black and other custom officials discovered currency in an amount greater than $10,000. As a result of these events, Dudley was indicted and convicted of the felonies of failing to declare negotiable instruments in excess of $10,000.00 and of making a false statement on a customs declaration.

Following those convictions, Dudley was required to testify before a grand jury under a court order of use immunity. The grand jury was investigating illegal narcotics trafficking in the northern Virginia area, and in the course of that testimony before the grand jury, Dudley stated that she had received the above-mentioned currency from her boyfriend who had died

seven weeks before her arrival at the airport. Further investigation of this testimony by a special agent of the Customs Service, Robert Harrold, revealed that, by tracing their serial numbers, certain of the bills had not been released into circulation by the Baltimore branch of the Federal Reserve Bank until after the date of the death of Dudley's boyfriend. The internal investigation regarding the issuance dates of the currency in question was performed at the request of Agent Harrold to James McEntee, assistant manager in the cash department of the Baltimore branch. McEntee had directed a staff assistant, Gail Busby, to make the appropriate search, and she conducted an exhaustive review of various records maintained in the branch. From that search, Busby prepared a "GX 4" report in which she concluded that many of the $20 bills that bore the serial numbers in question were not released into circulation until after the death of Dudley's boyfriend.

Having reached the conclusion that Dudley had lied to the grand jury concerning the source of the currency seized from her, the United States secured indictment of Dudley for perjury by subsequent grand jury proceedings on January 11, 1990. She was tried on this charge on June 19, 1990, and the jury returned a guilty verdict. Various post-trial motions were filed and denied by the court, and she was sentenced for her perjury conviction. This appeal followed in which the appellant advances four assignments of error during her trial on the perjury charge which, she asserts, entitle her to a new trial. These will be treated in sequence.

## B.

### I.

■ The appellant's first assignment of error is that the trial court erred in permitting the jury to hear evidence concerning her conviction for the earlier false-declaration charge. This assignment of error is predicated on Rule 404(b) of the Federal Rules of Evidence which prohibits "evidence of other crimes, wrongs or acts" from being introduced in a criminal trial to

"prove the character of the person in order to show action and conformity therewith." Fed.R.Evid. 404(b). The government maintains that the alleged "other-crimes" evidence was properly admissible in order to provide a full presentation of the offense charged and its context so as to make Dudley's grand-jury testimony understandable to the jury. The government further argues that the challenged evidence was admissible to prove Dudley's "intent" and "plan" which are two legitimate exceptions to Rule 404(b).

Viewed objectively, this assertion of error is plainly without merit and was addressed by this circuit in *United States v. Masters*, 622 F.2d 83 (4th Cir.1980). In that case, this court stated:

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence furnishes part of the context of the crime or is necessary to a full presentation of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving the immediate context or the res gestae, or the uncharged offense is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other ... and [is thus] part of the res gestae of the crime charged. And where evidence is admissible to provide this full presentation of the offense, there is no reason to fragmentize the event under inquiry by suppressing parts of the res gestae. The jury is entitled to know the setting of a case. It cannot be expected to make its decision in a void—without knowledge of the time, place and circumstances of the acts which form the basis of the charge.

*Id.* at 86 (footnotes, internal quotations and citations omitted). In the present case, the perjury charge at issue could not well be understood unless its context was established before the jury. Establishing that context requires detailing some of the facts

of the first case. The court below did not permit the prosecution to dwell on the first case, but did permit the prosecution to adduce some evidence of the false-declaration offense so as to give to the jury the context of the second offense. This seems entirely proper, and there was, thus, no abuse of discretion on the part of the trial court.

## II.

As her second assignment of error, the appellant alleges that the admission of the "GX 4" form, prepared by Busby, was an admission of hearsay evidence and was not remedied by any of the exceptions to the hearsay rule. According to the appellant, the "GX 4" form was not admissible as a business record because it was not prepared in the regular course of business and because it was prepared by a law-enforcement agent in preparation for litigation. Furthermore, Dudley asserts that the "GX 4" form is only a summary of business records and should not, as a summary, be admissible.[1] In response to these contentions, the government asserts that the "GX 4" form was properly admissible as a business record pursuant to Rule 803(8)(A)–(B) of the Federal Rules of Evidence. The government concedes that the "GX 4" form is only a summary of other normally kept business records, but since those records have been destroyed, the government maintains that the "GX 4" form is the "best evidence" of the information contained on the destroyed forms.

█ Rule 803 of the Federal Rules of Evidence provides, in pertinent part, as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness[,] ... [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed

pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, ... unless the sources of the information or other circumstances indicate lack of trustworthiness.

Fed.R.Evid. 803(8). In responding to the arguments of the appellant, it should be noted, at the outset, that the Baltimore branch of the Federal Reserve Bank is required to conduct meticulous record-keeping and oversight for its area concerning the currency of this country. This is clearly a legal obligation of the Federal Reserve Bank and its ancillary banks. Furthermore, "GX 4" forms are used in a number of other contexts by the various branches pursuant to the record-keeping and oversight responsibilities assigned to the Federal Reserve Bank. It is clear, therefore, that the "GX 4" form was prepared pursuant to a legal duty.

█ Regarding the appellant's claim that the "GX 4" form was prepared by a law-enforcement officer in preparation of litigation, the preparer of the form, Busby, is not a law-enforcement officer. She was acting at the direction of a law-enforcement officer (Agent Harrold) through Mr. McEntee, but she was not advised of the purpose for which the form was being prepared. The Eighth, Fifth and Ninth Circuits have carefully addressed the issue in the customs context in *United States v. Enterline*, 894 F.2d 287 (8th Cir.1990), *United States v. Puente*, 826 F.2d 1415 (5th Cir. 1987) and *United States v. Orozco*, 590 F.2d 789 (9th Cir.), *cert. denied*, 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 288 (1979). In those cases, the courts concluded that, when a governmental agency performs mechanical record-keeping (the recording of license-plate numbers of cars crossing the border for example) and provides a law-

---

1. In connection with this assignment of error, it is important to note that, in conformity with the universal policy of the Federal Reserve Bank, the records from which the "GX 4" form was prepared had been destroyed, according to policy, at the end of two years. Consequently, the original documents from which the "GX 4"

form was prepared were not available at trial. All parties agree that the business records that provided the basis for the information contained in the "GX 4" form would have been admissible evidence pursuant to the business-records exception.

enforcement officer with a computerized print-out of that information, the print-out is admissible. Building upon these holdings, it does not seem that the "GX 4" form falls within the "law-enforcement-officer" exception and is not inadmissible on this basis.

Finally, the appellant contests the admissibility of the "GX 4" form because it is only a summary of regularly kept business records and is, therefore, only derivative in nature. The fact of the matter is, however, that the records upon which the information in the "GX 4" form was based have been destroyed pursuant to the routine policy of the Baltimore branch to destroy out-dated records. The underlying records cannot, as a result, be produced, but since there has been no ground raised for contesting the accuracy or trustworthiness of the information contained in the "GX 4" form, it is appropriate to admit the form as the "best evidence" of the destroyed records. See Fed.R.Evid. 1004(1) ("The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if … [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."). Therefore, the fact that the "GX 4" form is a summary and derivative in nature does not pose any impediment to its admissibility, and Dudley should not be entitled to a new trial on this or any other basis concerning the admissibility of the "GX 4" form.

### III.

In her third assignment of error, the appellant asserts that the trial court erred in not declaring a mistrial and in not later granting her motion for a new trial due to prosecutorial misconduct that occurred during the closing argument. According to appellant, the prosecution referred to inculpatory evidence that was not part of the record (and hence not before the jury). The appellant maintains that she was prejudiced by this conduct and deserves a new trial on this basis. In response, the government argues that nothing improper was stated during the closing argument, and alternatively contends that, if anything improper was said, it was stated as a clarification made in light of an objection interposed by the appellant's counsel during the closing argument; the error was remedied by the judge's jury instructions; and the statement was not prejudicial.

Viewed in its entirety, a fair reading of the remarks at issue in the present case reveals that the prosecutor did not refer to evidence not in the record and the district court judge did not "abuse his discretion" in not granting, on the appellant's motion, either a mistrial or a new trial. This conclusion is buttressed by the fact that it is only very infrequently that a new trial will be granted on this basis. In truth, that remedy is reserved for the most egregious cases and is not applied in cases such as the present case. See, e.g., United States v. Weatherless, 734 F.2d 179, 181 (4th Cir.), cert. denied, 469 U.S. 1088, 105 S.Ct. 595, 83 L.Ed.2d 704 (1984). For these reasons, this assignment of error must be rejected.

### IV.

As her fourth assignment of error, the appellant claims that the trial court erred in increasing her base offense level, pursuant to the Sentencing Guidelines,[2] based upon her alleged "substantial interference with the administration of justice."[3] According to the appellant, such enhancement is never appropriate when the offense involved is perjury since perjury is per se "substantial interference with the administration of justice." To put it another way, the appellant essentially argues that enhancing a sentence for the crime of perjury because of "substantial interfer-

---

2. U.S.S.G. § 2J1.3(b)(2) reads, "If the perjury or subornation of perjury resulted in substantial interference with the administration of justice, increase by 3 levels."

3. The enhancement was made by Judge Ellis pursuant to a provision within the Sentencing Guidelines themselves. In other words, the appeal concerns the application of a recognized statutory provision and not an upwards departure. U.S.S.G. § 2J1.3(b)(2).

ence with the administration of justice" is no different than enhancing a bank robber's sentence because there was money involved. However, there is a "substantial interference with the administration of justice," enhancement where such interference resulted in the "unnecessary expenditure of substantial governmental ... resources." U.S.S.G. § 2J1.3(b)(2), comment. (n.1).

In response, the appellee notes that the appellant does not object to any of the trial court's factual findings made during the sentencing hearing. Instead, the appellee maintains that the appellant's objection is more philosophical than anything else, and the appellee concludes that there are numerous decisions that properly allow an enhancement for "substantial interference with the administration of justice" when the underlying offense is either obstruction of justice or perjury. *Cf. United States v. Lueddeke,* 908 F.2d 230 (7th Cir.1990); *United States v. Barnhart,* 889 F.2d 1374 (5th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1307, 108 L.Ed.2d 483 (1990); *United States v. Bridges,* 717 F.2d 1444 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 708 (1984); *United States v. Perkins,* 748 F.2d 1519 (11th Cir.1984). For these reasons, the appellee asks the Fourth Circuit to decline the appellant's request to remand her case for resentencing.

Considering all of the arguments made by counsel, this court believes that an enhancement for "substantial interference with the administration of justice" is proper in many instances—including a perjury case. The district court found, by a preponderance of the evidence standard, *United States v. Jones,* 900 F.2d 512, 522 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990), that Dudley's perjury before the grand jury had "a substantial interference with the administration of justice," in that the perjurious statement resulted in the "unnecessary expenditure of substantial governmental ... resources." U.S.S.G. § 2J1.3(b)(2), comment. (n.1). The district court was not clearly erroneous in the sentencing and was cor-

rect in enhancing the appellant's sentence, and the case should not, therefore, be remanded for resentencing.

### C.

For the reasons stated herein, the decisions of the court below are

AFFIRMED.