**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Toby L. WELCH, Defendant-Appellant.**

**No. 90-2676.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 25, 1991.

Decided Oct. 15, 1991.

John W. Vaudreuil, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Madison, Wis., for plaintiff-appellee.

Glenn Reynolds (argued) and Sarah B. O'Brien, O'Brien & Reynolds, Madison, Wis., for defendant-appellant.

Before CUDAHY, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Defendant Toby L. Welch appeals his conviction for conspiracy to distribute cocaine and to possess cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). He alleges that the trial court committed reversible error by excluding a defense transcript of a conversation between the defendant and another member of the conspiracy and refusing to accept the alleged expert testimony that the government's tape was altered; in the alternative, the defendant contends that he is entitled to another sentencing hearing based upon the trial court's alleged errors. We disagree with the defendant-appellant's contentions and affirm.

## I. BACKGROUND

On January 24, 1990, a federal grand jury returned a two-count indictment against the defendant, Toby L. Welch: Count One charged the defendant with conspiracy to possess cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1).[1] Timothy Scholl and Chase Brown were named as co-conspirators in the indictment, but were not charged as defendants. Count Two charged the defendant Welch with using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).[2] Some two months later, on March 28, 1990, a superseding indictment was returned alleging that the conspiracy referred to in Count One occurred during an expanded time period from approximately May 1, 1989 through January 9, 1990; Count Two of the superseding indictment charged that the defendant used or carried a firearm during and in relation to a drug trafficking crime. The defendant when arraigned on April 24, 1990, refused to enter a plea to either count, and the court entered not guilty pleas on his behalf and the trial proceeded on May 23, 1990.

At trial, testimony revealed that the defendant and the government witnesses Timothy Scholl and Chase Brown were involved in a conspiracy to sell cocaine. Scholl testified that in approximately May of 1989, Welch began supplying him and Chase Brown with cocaine to sell.[3] Scholl further stated that on other occasions the defendant would give him cash to purchase the cocaine, and after purchase he would give the cocaine to Welch who would in turn return it to Scholl and Brown for distribution.

The incident giving rise to the defendant's arrest occurred on January 9, 1990. Prior to this date, Scholl and Brown had

1. 21 U.S.C. § 841(a)(1) makes it "unlawful for any person knowingly or intentionally—
 (1) To manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance ..."

2. 18 U.S.C. § 924(c)(1) provides that "[w]hoever, during and in relation to any crime of violence or drug trafficking crime ..., uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years ..."

3. Scholl related that he met the defendant Welch at Welch's auto reconditioning business sometime in 1987 when he was employed by the defendant in Madison, Wisconsin.

negotiated for the purchase of cocaine from one David Matthews, an undercover agent of the Wisconsin Department of Justice. Scholl testified that he met the defendant at a Menard store parking lot in Madison, Wisconsin on January 9, 1990, and at this time Welch gave him $12,000 to purchase cocaine from Matthews. Scholl then left to meet with Matthews and Brown, and after Scholl displayed the defendant's $12,000 to Special Agent Matthews, Scholl and Brown were arrested. At this time, Scholl and Brown agreed to cooperate with law enforcement officials in a drug investigation concerning the defendant Welch. Scholl was fitted with a tape recorder and given a prepared package as a facsimile of the one-pound quantity of cocaine that the defendant was expecting Scholl to deliver. Following these preparations, Scholl, Brown and Agent Matthews returned to the Menard parking lot to meet Welch. Upon his arrival at the lot, Scholl entered Welch's van and handed the defendant the package who in turn placed it in a pouch behind the back seat of the van. Scholl advised the defendant during a brief conversation that the package contained cocaine. Shortly thereafter, Scholl exited the van and was arrested. A gun belonging to the defendant was found in Welch's van immediately following his arrest. The defendant testified at trial that he frequently kept the pistol in his van to shoot pigeons.

The defendant's testimony conflicted with the testimony of Scholl regarding the amount of money he had given Scholl: Welch related that he had given Scholl only $4,800 as a loan to enable Scholl to purchase a car, and to enable him to resell it immediately thereafter at a profit. Welch also stated he believed that the package Scholl gave him contained the $4,800 that Scholl had borrowed. Furthermore, Welch stated that Scholl at this time suggested that he hide the package in the van.

Following three days of trial, the jury found the defendant guilty of the conspiracy charge in Count One and not guilty of the firearms charge in Count Two. On July 23, 1990, the district court sentenced the defendant to 121 months in prison, to be followed by a four-year term of supervised release.

## II. ISSUES FOR REVIEW

The defendant raises the following issues on appeal: (1) did the district court abuse its discretion when denying the defendant the opportunity to present an alleged expert witness to testify concerning the alleged editing of the tape recording of the conversation between the defendant and Timothy Scholl; (2) did the court abuse its discretion in permitting the jury to listen to the tape recording during its deliberations; (3) did the court err when determining the amount of cocaine involved in the defendant's criminal conduct category and also in refusing a downward departure based on "family ties and circumstances"; and (4) did the court err in enhancing the defendant's sentence when considering his possession of a firearm, his role in the offense, as well as his obstruction of justice.

## III. ANALYSIS

### A. Defendant's Alleged Expert Witness

■ The defendant initially challenges the district court's exclusion of his alleged expert witnesses' testimony concerning the tape of his conversation with Scholl and his proffered alternative transcript of the tape of this conversation. We review a district court's decision to exclude expert testimony under an abuse of discretion standard. *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990). "[This] determination will be affirmed unless it is 'manifestly erroneous.'" *Id.* citing *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1308 (7th Cir. 1987).

During the testimony of the government witness Timothy Scholl, the government offered in evidence a copy of a tape recording made during Scholl's meeting with the defendant in the defendant's van on January 9, 1990 as well as a transcript of that tape. The defendant called Marvin Nonn to testify regarding the tape recording and attempted to qualify him as an expert wit-

ness on tape authentication.[4] On cross-examination, Nonn admitted that he had never previously testified as an expert witness in a court proceeding. Nonn stated that he listened for irregularities on a reel-to-reel copy he made from a micro-cassette tape recording provided to him by defense counsel. This microcassette copy had been prepared by holding a tape recorder next to a speaker while recording from the original tape. Defense counsel asked Nonn to give an opinion as to whether the government's transcript accurately depicted the contents on the tape, the government objected, arguing that Nonn was not qualified as an expert witness pursuant to Rule 702 of the Federal Rules of Evidence.[5] The court agreed and sustained the objection. The defendant's counsel next asked Nonn whether he believed the government's tape had been edited. The government once again objected to Nonn's attempt to offer an expert opinion and again the objection was sustained. Nonn testified on cross examination that the tape he made was a fourth-generation copy and that the established criteria set forth by the Federal Bureau of Investigation required the use of only an original tape for any tape authentication testimony.[6]

When the case was submitted to the jury, the defendant requested that the court give an expert witness instruction as to Nonn. The court declined to give the instruction, stating that what was said on the tapes "was an issue for the jury to determine...." Furthermore, the court stated that the defense had the opportunity to submit a proper alternative transcript, but the transcript that the defendant offered was unacceptable with the editorial comments contained therein which included "sudden level change" and "Repeated pulses ... Sound like electronic edits (sic)." The defendant argues that the district court abused its discretion in barring Nonn from testifying as an expert witness regarding what he heard on the tape and concerning the government's possible editing of the tape recording.

■ "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator Company*, 896 F.2d 210, 212 (7th Cir.1990) (citation omitted). Furthermore, "[c]ourts agree that it is improper to permit an expert to testify regarding facts that people of common understanding can easily comprehend." *United States v. Lundy*, 809 F.2d 392, 395 (7th Cir.1987). We agree with the trial judge's determination because we do not believe that either superior knowledge, skill, experience or education or a combination thereof are required for understanding a tape of human conversation; thus, a jury is eminently qualified to understand the contents of the tape. As noted previously, "understanding what is said in a tape recorded conversation is not outside the average person's understanding." *United States v. Devine*, 787 F.2d 1086, 1088 (7th Cir.1986) (citation omitted). Thus, the district court's sustaining of the government's objections to allowing Nonn to testify as an expert regarding the contents of the tapes was proper.

■ The court ruling that Nonn was not qualified to testify as an expert witness

---

4. Nonn related that he was employed with Wisconsin Public Radio as the Chief Audio Production Engineer and is responsible for the sound quality of the programs heard over the Station's frequency. Nonn has a bachelor's degree in music from the University of Wisconsin–Madison and has taught courses at the Madison Area Technical College which combined engineering and music principles. Nonn further testified that on occasion he has analyzed tapes for the Madison Police Department.

5. "**Rule 702. Testimony of Experts**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

6. The term "generation" used with respect to a tape refers to the number of times that a copy is removed from its copied original. For instance,

regarding possible editing of the tape was also proper. First, the micro-cassette tape copy that had been made by the defendant's counsel by holding a small hand-held recorder to a speaker while a copy of the original tape was being played and which Nonn then used to make a reel-to-reel copy is an insufficient substitute for the original tape—Nonn admitted as much when he testified that his review of a third generation copy failed to qualify under the FBI standards that require that an expert's opinion testimony dealing with tape alteration be based on an analysis of the original recording. Second, it is interesting to note that to date Nonn had never been qualified to testify as an expert as he lacked sufficient training or experience in forensic tape analysis. Furthermore, he was unfamiliar with the use of technological instruments used to detect alterations and or additions or deletions to tapes. Thus, the district court did not abuse its discretion in banning Nonn from testifying as an expert witness regarding possible alterations of the tape because Nonn lacked the "superior knowledge, skill, experience, or education with the subject matter of [his] testimony." *Carroll,* at 212.

■ Furthermore, the defendant's contention that the district court erroneously excluded the defendant's proffered transcript of the tape-recorded conversation is equally without merit. A comparison between the government's transcript and the defendant's proffered transcript reveals the transcripts to be essentially identical with the exception of Nonn's editorial statements regarding alleged tape alteration and several words that were not on the government's transcript. Moreover, the defendant produced a transcript with editorial comments that were patently improper, and thus we are of the opinion that the district court did not abuse its discretion in admitting only the government's transcript (essentially identical to the one offered by the defendant) in evidence.

B. Admission of the Tape Recording

■ The defendant also argues for reversal of his conviction because the trial

court committed error by allowing the jury to listen to the tape recording during its deliberations. The defendant's argument fails because this court has repeatedly held that juries are allowed with court approval to have properly authenticated tapes played during its deliberations. Nonetheless, in an effort to avoid case law that clearly allows the jury to have tapes played during its deliberations, the defendant attempts an end-around by instead challenging "the authenticity and reliability of the tape." We will uphold evidentiary rulings unless the defendant can demonstrate that the district court abused its discretion. *United States v. McNeese,* 901 F.2d 585, 598 (7th Cir.1990). When dealing with the admissibility of tape recordings, "this court has noted that 'the trial judge exercises broad discretion in determining whether [the government has satisfied its burden of authenticating a tape recording]. Accordingly, the trial judge's ruling on the admissibility of the tape will not be overturned on appeal absent extraordinary circumstances.'" *United States v. Degaglia,* 913 F.2d 372, 375 (7th Cir.1990) (citations and quotes omitted).

■ In order to admit a tape recording into evidence, the government "'must prove, by clear and convincing evidence, that the tape is a true, accurate and authentic recording of the conversation, at a given time, between the parties involved.'" *Id.* at 375 (quoting *United States v. Faurote,* 749 F.2d 40, 43 (7th Cir.1984)). The government has met this standard. Government-witness Scholl, who had known the defendant for approximately three years and worked with him on a daily basis, testified that he had participated in the taped conversation as well as identifying the defendant as the other participant. Scholl also stated that the tape recording accurately reflected his conversation with the defendant and the defendant's conversation with him, Scholl, and that there had not been any additions or deletions. Moreover, Scholl stated that the transcript was an accurate transcription of the voices and information recited on the tape. Thus, the government established that the tape introduced was an accurate and authentic re-

the tape that defense counsel gave to Nonn was a third generation copy because it was a copy

made of a copy of the original.

cording of the conversation and thus the district court's reception of it in evidence was proper.

## C. Amount of Cocaine

 The defendant challenges the district court's determination of the amount of cocaine involved in the offense for purposes of computing his base offense level under 2D1.1 of the Sentencing Guidelines. The defendant does not contest the jury's finding that he conspired to purchase one pound of cocaine (or 454 grams) on January 9, 1990, the date of his arrest. Instead, the defendant argues that the "estimate given by Scholl as to the quantity of drugs he and [the defendant] sold from May, 1989 to January, 1990" should not have been included in his relevant conduct for the purpose of computing his sentence under the Sentencing Guidelines because Scholl's "estimate of the amount of drugs sold did not meet the requisite burden of proof." Specifically, the defendant's argument relates to the following testimony given by Scholl:

> "GOVERNMENT: From approximately May of 1989 through January 9 of 1990, approximately how much cocaine did you sell for Mr. Welch, let's say, average per month?
>
> SCHOLL: One to two ounces maybe, at the most."

The defendant argues that Scholl's testimony, which included the word "maybe," is insufficient to support the district court's computation of the amount of cocaine involved in the offense.

"Ascertaining the quantity of drugs involved in an offense for the purpose of sentencing is a factual determination subject to the clearly erroneous standard." *United States v. Buggs,* 904 F.2d 1070, 1078 (7th Cir.1990) (citations omitted). The district court determined that the defendant was involved in the distribution of one ounce of cocaine per month between May, 1989 and January 9, 1990. In effect, the trial judge accepted Scholl's lower estimate of one ounce of cocaine per month only, rather than the higher estimate of possibly

two ounces per month. Specifically, the court found that the "defendant was aware of those offenses beginning in May and continuing through January 9th of 1990 [and] those monthly transactions of between one and two ounces per month." Moreover, the cocaine transaction of January 9, 1990 which led to the defendant's arrest corroborates Scholl's testimony that he was involved with the defendant in a conspiracy to distribute cocaine and gives credence and credibility to his estimate of the amount of cocaine distributed per month during the term of the conspiracy: Scholl testified that the defendant provided him with the funds necessary to purchase the cocaine which he would then return to the defendant; the defendant would then provide the cocaine to Scholl and Chase Brown for distribution. Thus, Scholl had knowledge of the amount of cocaine that was available for distribution as well as the amount distributed and obviously this testimony was utilized by the trial judge in making his computation. The court's determination of the amount of cocaine involved in the offense for purposes of computing the defendant's base offense level under the Guidelines was not clearly erroneous.

## D. Possession of a Firearm

 The defendant next argues that the "court erred in enhancing [his] sentence for the possession of a gun when the jury acquitted him of [Count Two of the indictment]."[7] In support of his argument, the defendant reaches out and cites dicta from *United States v. White,* 888 F.2d 490, 499 (7th Cir.1989) in which this court noted that "it might make sense to treat an acquittal as a bar in order to avoid both nice questions of proof and the appearance of inconsistency."

*White* is distinguishable from the case at bar for the defendant fails to point out that the court in *White* did not have the particular issue of whether the trial court should be able to consider possession of a firearm to increase a defendant's sentence even

---

**7.** Count Two charged the defendant with using or carrying a firearm during and in relation to a

drug trafficking crime in violation of 18 U.S.C. § 924(c).

though the jury found the defendant not guilty under § 924(c), nor did the court resolve the issue. Furthermore, this court stated in a recent decision:

"Nothing in either the Guidelines or the Constitution prevents a judge from taking account of conduct in which the defendant engaged, whether or not an acquittal prevents the imposition of criminal penalties directly on that conduct. A verdict of 'not guilty' does not mean that the defendant didn't do it; it means that the prosecution failed to establish culpability beyond a reasonable doubt."

*United States v. Fonner*, 920 F.2d 1330, 1332 (7th Cir.1990). Other circuits which have considered the issue of an acquittal by a jury have held that an acquittal does not preclude the trial court from considering those facts when sentencing, including enhancement of sentence. *See United States v. Juarez–Ortega*, 866 F.2d 747 (5th Cir. 1989); *United States v. Isom*, 886 F.2d 736 (4th Cir.1989); *United States v. Mocciola*, 891 F.2d 13 (1st Cir.1989); *United States v. Dawn*, 897 F.2d 1444 (8th Cir.1990); *United States v. Rodriguez–Gonzalez*, 899 F.2d 177 (2nd Cir.1990). We note that a jury reaches its verdict of guilt or innocence utilizing the beyond a reasonable doubt standard, while the Guidelines' standard for resolving disputes is a less stringent quantum of proof, namely a preponderance of the evidence standard. *White*, 888 F.2d at 499. Thus, the district court properly considered whether the defendant's sentence should be enhanced for possession of a firearm even though the jury acquitted him of the offense as charged under § 924(c).

█ Next, we must determine whether the trial judge's action was clearly erroneous in enhancing the defendant's sentence on the basis of the defendant's possession of a firearm. Section 2D1.1(b)(1) of the Guidelines allows for a two-level increase "if a dangerous weapon (including a firearm) was possessed during commission of the offense." Application Note 3 to 2D1.1(b)(1) states:

"The adjustment should be applied if the weapon was present, *unless it is clearly improbable that the weapon was con-*nected with the offense. For example, enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." (Emphasis added).

The defendant contends that since he and other defense witnesses testified that the defendant used the gun for private purposes (namely shooting pigeons), the firearm should have been treated like the firearm in the hypothetical to Application Note 3. We find this argument to be unconvincing and agree with the trial judge's determination at sentencing that the gun was possessed by the defendant during the commission of the offense: the district court found that the semi-automatic pistol and loaded clip located in a storage department within the defendant's van were readily accessible and available to the defendant during the cocaine transaction; moreover, the district court found that it was clearly probable that the weapon was connected with the offense. In a case similar to the facts before us, this court upheld an enhancement when a gun and cocaine were found beneath a seat in a truck which the defendant had exited prior to making a drug transaction. *United States v. Armond*, 920 F.2d 480 (7th Cir.1990). Therefore, the trial court properly applied a two-level enhancement for the defendant's possession of a firearm during the commission of the offense pursuant to 2D1.1(b)(1) of the Guidelines.

### E. Role in the Offense

█ The defendant further objects to the trial court's application of a two-level enhancement for the defendant's role in the offense under 3B1.1(c) of the Guidelines. 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor" the offense level should be increased by two levels. Clearly, the defendant's role in the cocaine conspiracy necessitates the enhancement. Testimony at trial demonstrated that the defendant was the prime mover in setting up the tri-party cocaine distribution organization. The defendant approached Scholl in May of 1989 and asked him to become involved in selling

cocaine. The defendant gave money to Scholl in order that he might buy cocaine and give the drug to the defendant; the defendant would in turn provide the cocaine to Scholl and Chase Brown for distribution. Focusing on the transaction of January 9, 1990, which led to the defendant's arrest, the defendant provided Scholl with the $12,000 needed for the purchase of the cocaine and Scholl returned the cocaine to the defendant after the buy. Thus, the overall evidence in the record establishes the defendant's leadership role in the cocaine conspiracy and we are convinced that the district court properly applied a two-level enhancement for the defendant's role in the offense.

### F. Obstruction of Justice

■ The defendant challenges the two-level enhancement he received for obstruction of justice under 3C1.1 of the Guidelines. Like defendants similarly situated, Welch argues that the trial judge used the defendant's decision to testify before a jury and the subsequent guilty verdict as evidence that he testified untruthfully.

The trial judge based his two-level adjustment for obstruction of justice on his determination that the defendant's testimony at trial regarding Welch's advancing money to Scholl so that Scholl might purchase and then resell an automobile within a one and one-half hour period was "the third most incredible statement offered by a defendant in a proceeding which has come before" the court, given the relatively short time frame of one and one-half hour from the time the defendant gave Scholl the money and he returned with the package.

3C1.1 of the Guidelines directs the district court to increase a defendant's offense level by two if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense." The defendant denied that he was involved in a cocaine transaction on January 9, 1990, and stated that he had provided a loan of $4,800 to Scholl at approximately 5:50 p.m. to be

used for the purchase of a car. The defendant further related that he was waiting in the Menard parking lot expecting Scholl to return approximately an hour and a half later. The district court was asked and now we are asked to believe that during this time, Scholl took the money, purchased a car, sold that car at a profit, and returned the initial investment to the defendant. The district court found this story to be "incredible" in the face of testimony to the contrary and we agree and hold that the trial court did not commit clear error. We remind defense counsel that it is their obligation to pursue only those claims that have merit and point out that by raising frivolous arguments the "goal of vigorous and effective advocacy" is compromised. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (citing *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)).

### G. Refusal to Depart Downward

■ Finally, the defendant argues that the district court "declined to grant a downward departure of the defendant's sentence based upon its perception that family ties and circumstances were an inappropriate factor." However, the record reveals that the district court considered all the factors raised by the defendant and refused to grant a downward departure. The court concluded that its "examination of the Guidelines does not convince it that the downward departure recommended is appropriate in this instance." The defendant's argument fails because nowhere did the trial judge state that he was unable to consider such factors as family ties and circumstances. Furthermore, as we stated in *United States v. Lueddeke*, 908 F.2d 230 (7th Cir.1990), this court is without jurisdiction to review a district court's decision not to depart downward from the applicable Sentencing Guideline range:

> "Appellate review of a district court's sentence is limited to whether the sentence was 'imposed in violation of law,' was 'imposed as a result of an incorrect application of the sentencing guidelines' or was 'outside the applicable guideline range and is unreasonable.' 18 U.S.C.

§ 3742(e), (f). *Hence, this court does not have jurisdiction to review a district court's refusal to depart downward for a sentence dictated by the Sentencing Guidelines. United States v. Franz, 886 F.2d 973 (7th Cir.1989). So long as a sentence is lawfully imposed and the Guidelines are applied correctly a defendant has nothing left to appeal.* 908 F.2d at 235 (emphasis added). Therefore, the defendant's argument that the district court failed to consider whether a downward departure was appropriate is without merit.

## IV.

The decision of the district court is AFFIRMED.