977 F.2d 585
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Hector Gonzales ALVARADO, Defendant/Appellant.
 No. 91-2031.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 6, 1992.
Decided Oct. 14, 1992.
 
 Before BAUER, Chief Judge, and CUMMINGS and POSNER, Circuit Judges.
 
 ORDER
 
 1
 Hector Alvarado, who was convicted of conspiracy to possess cocaine, 21 U.S.C. § 841(a)(1), challenges the district court's calculation of his base offense level and its finding that he was a major participant in the conspiracy. We affirm the district court in all respects.
 
 I. BACKGROUND
 
 2
 The drug conspiracy involved in this case began in 1989, when Alvarado's uncle, Roberto Alvarado[1] (Roberto), agreed to purchase cocaine from Oscar Favela. Under their arrangement, Favela bought cocaine for Roberto and received drugs and money in return. At first, Favela dealt directly with Roberto, but later Hector Alvarado (Alvarado) became involved in the deals. On about five different occasions, Alvarado handed money to Favela, instructed him to buy two kilograms of cocaine, then collected the cocaine.
 
 
 3
 Before the final of these deals, Alvarado asked Favela to purchase two kilograms of cocaine in Chicago. Favela informed Alvarado that no cocaine was available in Chicago, but he offered to buy some in Texas. After conferring with his uncle, Alvarado agreed to the deal and provided Favela $34,000. Favela gave the money to another defendant, Art Fernandez, who left to buy drugs in Texas. While Fernandez was away, Alvarado and Favela spoke every other day about the status of the deal.
 
 
 4
 On his return trip from Texas, Fernandez was arrested in Rock Falls, Illinois, and he agreed to implicate his co-conspirators. Pursuant to the agreement, Fernandez telephoned Favela, asking him to pick up the cocaine in Rock Falls. When Favela arrived in Rock Falls, he was also arrested. Under FBI surveillance, Favela called Hector Alvarado, claiming that his car had broken down. When Alvarado went to retrieve Favela, he was arrested by the FBI. Both Favela and Fernandez testified at Alvarardo's trial.
 
 
 5
 After Alvarado's conviction, the court conducted a sentencing hearing. During the hearing, Alvarado requested a two-point reduction to his offense level based on his role in the offense. Alvarado claimed that he was a young errand boy, under the control of his uncle, and hence a minor participant in the conspiracy. The court, however, rejected Alvarado's arguments and the requested two-point reduction. The court also found that, during the course of the conspiracy, Alvarado had possessed 5-15 kilograms of cocaine, resulting in a base offense level of thirty. The court sentenced Alvarado to ninety-seven months in prison, a sentence at the low end of the guideline range.
 
 II. ANALYSIS
 
 6
 Both the determination that Alvarado possessed 5-15 kilograms of cocaine and the finding that Alvarado occupied a major role in the conspiracy find support in the sentencing testimony.
 
 A. The Quantity of Cocaine
 
 7
 The quantity of cocaine involved in a conspiracy determines the severity of the offender's sentence. United States v. Edwards, 945 F.2d 1387, 1390 (7th Cir.1991). The quantity is calculated by adding the amount of cocaine involved in the offense of conviction to the amount involved in related offenses: those offenses that the court determines by a preponderance of the evidence "were part of the same course of conduct or common scheme or plan" as the offense of conviction. United States v. Duarte, 950 F.2d 1255, 1263 (7th Cir.1991). Such calculations are factual determinations, which we assess under a clearly erroneous standard. United States v. Cea, 963 F.2d 1027, 1030 (7th Cir.1992).
 
 
 8
 The clearly erroneous standard compels us to affirm quantity determinations based on witnesses' estimations. In United States v. Welch, 945 F.2d 1378, 1384 (7th Cir.1991), for example, a witness testified the defendant bought "at most" one to two ounces of cocaine per month. Relying only on this testimony, we affirmed the district court's addition of one ounce of cocaine per month.
 
 
 9
 Although recognizing this deferential standard of review, Alvarado nonetheless attacks the district court's calculation of his base offense level. He argues that the district court convicted him of attempting to possess 1.414 kilograms[2] of cocaine, yet sentenced him for 5-15 kilograms. The district court's calculations were based on the testimony of two different witnesses. The first, Oscar Favela, claimed that he dealt with Alvarado five times, including the time leading to Alvarado's conviction. On each of these occasions, Favela delivered two kilograms to Alvarado. This testimony was bolstered by FBI agent Brian Bartholmey, the agent who arrested and interrogated Alvarado. During the interrogation, Alvarado admitted that "for the past year or so, he and Roberto Alvarado had been obtaining kilos of cocaine from [Favela] about every couple of months."
 
 
 10
 Favela's and Bartholmey's testimony provided ample basis for the district court's finding of 5-15 kilograms. If, as Favela testified, Alvarado collected two kilograms of cocaine five times, he dealt a total of ten kilograms.
 
 
 11
 At oral argument, Alvarado denied that these other sales were part of the "same course of conduct or common scheme or plan" as the offense of conviction. Because Alvarado never raised this issue before the district court or in his briefs, the issue is technically waived. We will, however, address the claim briefly. To determine whether sales were part of the same course of conduct, we look for similarities in the location, the timing, and the participants. United States v. Ebbole, 917 F.2d 1495, 1496 (7th Cir.1990). Where, as in Alvarado's case, the same parties engage in five transactions within one year, each involving the same drug and method of operation, we consider these sales part of the same course of conduct. See United States v. Nunez, 958 F.2d 196, 198 (7th Cir.1992) (transactions that occurred over a four-year period but involved the same parties and type of drug are part of the same course of conduct.)
 
 
 12
 All of the sales were appropriately considered at sentencing.
 
 B. The Minor Participant Reduction
 
 13
 Under the Sentencing Guidelines, a defendant is entitled to a two-point reduction in his base level if he is deemed a minor participant in a conspiracy. A "minor participant" must occupy a role in the conspiracy that makes him "substantially less culpable than the average participant." United States v. Osbourne, 931 F.2d 1139, 1157 (7th Cir.1991). Whether a defendant is a minor participant is a question of fact, reviewed only for clear error. Id.
 
 
 14
 We have refused to find clear error in cases similar to Alvarado's. See United States v. Brick, 908 F.2d 1092, 1095 (7th Cir.1990). In Brick, for example, we affirmed the district court's denial of a reduction even though the defendant only acted as a middle-man between his supplier and DEA agents. Although Brick did not profit as much as his supplier, he occupied an integral role in the conspiracy because he conducted one drug deal between the parties and arranged two others over the telephone. See also Cea, 963 F.2d at 1029 (the defendant also acts as a liaison between buyer and seller).
 
 
 15
 Like Brick, Alvarado occupied a middle-man role in the conspiracy. Alvarado contacted his uncle's supplier on the telephone, delivered money to the suppliers, and later collected the cocaine. Before the final deal, Alvarado called Favela and asked him to buy cocaine in Chicago. When the drugs were unavailable in Chicago, Alvarado and Favela arranged to buy them in Texas. After Fernandez left for Texas, Alvarado inquired frequently about the status of the deal. When Fernandez returned, Alvarado offered to pick up the drugs in Rock Falls. These facts illustrate that Alvarado's role was not minor compared to the other participants, even though Alvarado was young and possibly influenced by his uncle.
 
 
 16
 We AFFIRM.
 
 
 
 [1]
 Roberto Alvarado is also referred to as "Robert Alvarado" in some documents
 
 
 [2]
 Alvarado was also convicted of conspiring to possess two kilograms