**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 05-4541**

———————————

UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

        versus

LEON OXENDINE,

                              Defendant - Appellant.

———————————

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Fox, Senior District Judge.  (04-cr-41-1)

———————————

Submitted:  June 15, 2007          Decided:  August 10, 2007

———————————

Before MOTZ, KING, and SHEDD, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

Dennis H. Sullivan, Jr., THE SULLIVAN LAW FIRM, P.C., Wilmington, North Carolina, for Appellant.  George E.B. Holding, United States Attorney, Anne M. Hayes, Christine Witcover Dean, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Leon Oxendine was convicted by a jury of witness tampering, 18 U.S.C.A. § 1512(b)(3) (West Supp. 2007) (Count One); making a false statement in a matter being investigated by the Federal Bureau of Investigation (FBI), 18 U.S.C.A. § 1001 (West 2000 & Supp. 2007) (Count Two); and making a false declaration under oath before a grand jury, 18 U.S.C. § 1623 (2000) (Counts Three through Seven). Oxendine was sentenced to a term of fifty-one months imprisonment. On appeal, he contests the district court's decision to enhance his sentence for substantial interference with the administration of justice, U.S. Sentencing Guidelines Manual § 2J1.2(b)(2) (2004) (Obstruction of Justice), and for having a leadership role, USSG § 3B1.1(a). We affirm.

Oxendine was a lieutenant in the Lumberton, North Carolina, police department, and the head of the Selective Enforcement Team (SET), when he obtained a search warrant for a house at 11 Albion Street based on false evidence of a controlled purchase of drugs there from James Adams. The confidential informant actually bought the drugs from a different person at a different place, facts known to Oxendine when he applied for the warrant. In addition, the confidential informant had planted a computer disk containing an image of a counterfeit $100 bill at 11 Albion Street earlier the same day, at Oxendine's direction. When the search warrant was executed, the disk was seized from a shelf

in the bathroom, where the confidential informant told Oxendine he had put it, and Oxendine then caused a federal investigation to be started, which was focused on Adams' supposed counterfeiting activity. Adams was in fact a drug dealer, and was arrested during the search, outside the house at 11 Albion Street, in possession of a variety of drugs.

The counterfeiting investigation had not progressed very far when state investigative agents learned that the computer disk had been planted at Oxendine's direction. Two of the SET officers were interviewed in December 2002. Before they were questioned, Oxendine counseled them not to cooperate, and they did not reveal what actually happened prior to the search. Oxendine was questioned in February 2003, but did not admit any wrongdoing. Around this time, one of the officers began cooperating with authorities and recorded a conversation with Oxendine and two involved officers on February 14, 2003. Oxendine testified before a grand jury in August 2003, and denied that he directed the informant to plant the disk at 11 Albion Street, discussed such conduct, admitted to others such conduct, or knew about such conduct. Oxendine was tried and convicted in 2004 of witness tampering, making a false statement, and making false declarations to the grand jury.

At sentencing, the district court adopted the presentence report, which applied a base offense level of 14 under USSG

§ 2J1.2, and added an enhancement of three levels for substantial interference with the administration of justice under § 2J1.2(b)(2), a four-level adjustment for a leadership role under USSG § 3B1.1, and two levels for abuse of a position of trust under USSG § 3B1.3. The final offense level was 23. Oxendine was in criminal history category I. His advisory guideline range was 46-57 months. The district court overruled Oxendine's objections to the enhancement for substantial interference with the administration of justice and the leadership role adjustment and imposed a sentence of fifty-one months imprisonment.

On appeal, Oxendine first challenges the district court's determination that his offense resulted in substantial interference with the administration of justice. As defined in Application Note 1 to § 2J1.2, substantial interference with the administration of justice "includes a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources." The district court's determination that Oxendine's false statements and witness tampering resulted in "the unnecessary expenditure of substantial government and court resources," is reviewed for clear error. United States v. Dudley, 941 F.2d 260, 265 (4th Cir. 1991).

The government argues that the enhancement applied because government resources were unnecessarily expended as a result of Oxendine's having caused a federal investigation to be started based on false evidence, as well as the subsequent investigation that followed Oxendine's false statements to the agents. We are of the view that the initial counterfeiting investigation, and the conduct that caused it, is not relevant conduct, given that Oxendine was not convicted of planting false evidence, only of lying about it and directing others to lie. Under USSG § 1B1.3(a)(1), a defendant is responsible for his own conduct, and the conduct of others in a joint criminal activity, "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." The conduct that caused the initial investigation of Adams' alleged counterfeiting was none of these. Moreover, because the offenses of conviction were not "of a character for which § 3D1.2(d) would require grouping of multiple counts," in this case relevant conduct does <u>not</u> include "all acts and omissions described in subdivisions (1)(A) and (1)(B) . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." <u>See</u> USSG § 1B1.3(a)(2).

Thus, although the dismissal of drug charges against Adams because Oxendine's involvement in the search of the Albion

Street house and his planting of false evidence of counterfeiting compromised the drug case constitutes an improper termination of a felony investigation, this determination is based on conduct by Oxendine which was not relevant conduct under USSG § 1B1.3, and thus, should not have been considered.

However, the false statements given by Oxendine and Jordan required additional investigation and, ultimately, Oxendine's trial and conviction. This constituted an "unnecessary expenditure of substantial governmental or court resources," which supports the enhancement. USSG § 2J1.2, comment. (n.1). Moreover, after Oxendine's conviction, other persons in whose cases Oxendine had been involved requested new trials. This was evidence of interference with the administration of justice which could be attributed, at least in part, to the witness tampering, false statements, and false grand jury testimony which led to Oxendine's prosecution. Oxendine's lack of truthfulness during the SBI and FBI investigation of the conduct of the SET further compromised his credibility, and thus had a serious effect on the administration of justice.

Oxendine maintains that the evidence of substantial interference with the administration of justice did not have sufficient indicia of reliability to support its probable accuracy. This argument is belied by the trial record. He also claims that his conduct amounted to no more than obstruction of justice.

However, the enhancement is designed to punish more severely those instances of obstruction of justice which cause greater disruption in the administration of justice. <u>United States v. Tankersley</u>, 296 F.3d 620, 623-24 (7th Cir. 2002). We conclude that the district court did not clearly err in making the enhancement in his case.

Oxendine also contends that he was not a leader because his offenses were singular in nature, that is, committed only by him. He argues that the evidence that he influenced another officer to conceal the planting of the computer disk does not justify the adjustment because it happened only once. The district court's determination that the defendant was a leader or organizer in the offense is a factual issue that is reviewed for clear error. <u>United States v. Sayles</u>, 296 F.3d 219, 224 (4th Cir. 2002). The evidence at trial established that Oxendine counseled all the officers who knew about the planting of the computer disk to conceal what they knew, and he continued to do so, as shown in the recorded conversation with three involved officers on February 14, 2003. Consequently, the district court did not clearly err in finding that Oxendine led others to obstruct justice.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>